*[SKAT logo]*

<u>**EXHIBIT 1**</u>
**L U N D G R E N S**

The Goldstein Law Group PC 401(k) Profit Sharing Plan
C/O Scott Goldstein
615 Hawerstraw Road
Suffern
NY 10901
USA

Special Control 3

Kratbjerg 236
3480 Fredensborg
Denmark

www.skat.dk

Date: 4 May 2018

Captia ID 16-1673253

TIN: 13-4030325

# Decision – Revocation of former decisions on dividend tax refunds

SKAT has previously made decisions on dividend tax refunds to The Goldstein Law Group PC 401(k) Profit Sharing Plan ("GOLDSTEIN") based on claims submitted by GOLDSTEIN's agent GOAL TaxBack Limited ("GOAL")[1].

SKAT hereby revokes the previous decisions on dividend tax refunds of DKK 9,521,280 in total as GOLDSTEIN was not entitled to such refunds.

The revocation concerns the following refund claims:

|                  | Date             | Amount refunded   |
|------------------|------------------|-------------------|
| Claim submitted  | 26 March 2014    | 1,306,800 DKK     |
| Claim submitted  | 4 April 2014     | 3,510,000 DKK     |
| Claim submitted  | 6 May 2014       | 290,250 DKK       |
| Claim submitted  | 10 December 2014 | 708,750 DKK       |
| Claim submitted  | 4 March 2015     | 451,980 DKK       |
| Claims submitted | 26 March 2015    | 3,253,500 DKK     |
| Total            |                  | 9,521,280 DKK     |

In SKAT's opinion, GOLDSTEIN does not and never did own the shares listed in the claims submitted, and the dividends concerning the shares listed in the claims submitted were not received by GOLDSTEIN.

Moreover, in SKAT's opinion, GOLDSTEIN did not have sufficient capital to make the investments in Danish shares which underlie the above-mentioned dividend tax refund claims.

According to the tax vouchers submitted, GOLDSTEIN allegedly invested a substantial amount in shares in Danish companies and received dividends on those shares. The information available in the case does not support such substantial investments.

---

[1] Appendices 123-11-1 to 123-17-6

Weight has been given by SKAT to:
- GOLDSTEIN having submitted Form 5500 SF (Short Form) in the USA, according to which its assets/funds and number of participants at end 2012, 2013, 2014 and 2015 amounted to:

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[2] at year end | DKK calculated | Number of participants |
|---|---|---|---|---|
| 2012[3] | 1,810,676 | 5,6591 | 10,246,797 | 7 |
| 2013[4] | 1,707,383 | 5.4127 | 9,241,552 | 4 |
| 2014[5] | 1,506,646 | 6.1214 | 9,222,783 | 4 |
| 2015[6] | 1,024,610 | 6.83 | 6,998,086 | 4 |

Thus, based on the information that has now become available, SKAT is of the opinion that GOLDSTEIN did not have the financial means to own shares on the scale set out in its dividend tax refund claims. By way of example, this can be seen from:
- GOLDSTEIN's indication on 18 – 20 March 2014 that it was the owner of shares in Danske Bank A/S and Novo Nordisk A/S B worth a total of DKK 783,000,000[7].

Thus, GOLDSTEIN does not satisfy the conditions for a refund of dividend taxes withheld on Danish shares, see article 10 of the DK-US double taxation convention.

SKAT thus refunded the dividend tax to GOLDSTEIN on a false basis and, accordingly SKAT revokes the previous decisions on dividend tax refunds.

SKAT's decision is in accordance with the proposed decision previously sent to GOLDSTEIN, as GOLDSTEIN has failed to substantiate its claims in the notice of objection of 23 April 2018.

On behalf of SKAT, the Legal Adviser to the Danish Government will issue proceedings against GOLDSTEIN to recover losses and damages.

Please also note that in SKAT's opinion, the amounts paid to GOLDSTEIN form part of a large group of international cases which have been reported by SKAT to the State Prosecutor for Serious Economic and International Crime as suspected fraud against the Danish State. SKAT has reported the group of cases as falling within the scope of section 279 of the Danish Criminal Code as unjustified dividend tax refund claims where the claimant pension fund does not and never did own the shares listed in the claims submitted and where the dividends concerning the shares listed in the claims submitted were not received by the claimant pension fund.

For more details, reference is made to the below statement of facts and the documents forwarded together with SKAT's proposed decision of 23 March 2018.

---

[2] According to www.nationalbanken.dk
[3] Appendices 123-8-4 to 123-8-6
[4] Appendices 123-9-4 to 123-9-5 (figures from beginning of 2014)
[5] Appendices 123-9-4 to 123-9-6
[6] Appendices 123-9-7 to 123-9-9
[7] Section 1.3, bundle no. 21814

**Statement of facts and reasoning**

## Contents

1.  Facts ....................................................................................................................... 4

    1.1  Description of case ........................................................................................ 4

    1.2  Dividend tax refunded ................................................................................... 5

    1.3  Calculation of investments ............................................................................ 5

    1.4  Registration of Danish shares ........................................................................ 6

    1.5  Information from the IRS in the USA ............................................................ 6

2.  Legal rules ........................................................................................................... 7

    2.1  Consolidation acts ......................................................................................... 7

    2.2  Double taxation convention ........................................................................... 7

3.  SKAT's comments ............................................................................................... 8

    3.1  Statutory/legal basis ...................................................................................... 8

    3.2  Ownership of shares and receipt of dividends ............................................... 8

        3.2.1  Securities account ................................................................................. 8

        3.2.2  Capital available for the pension fund's investments ............................. 8

        3.2.3  Dividends and dividend tax withheld ..................................................... 9

    3.3  Revocation of previous decisions ................................................................. 10

4.  SKAT's proposed decision ................................................................................. 11

5.  The pension fund's comments on SKAT's proposed decision ............................. 12

6.  SKAT's final decision ........................................................................................ 14

How to appeal ........................................................................................................... 15

Statutory rules and regulations .................................................................................. 16

## 1.  Facts

### 1.1  Description of case

GOLDSTEIN is a registered pension fund in the USA and was established on 1 January 1999[8].

On behalf of GOLDSTEIN, GOAL submitted claims to SKAT in the period 26 March 2014 to 26 March 2014 for a refund of dividend taxes on Danish shares for a total of DKK 9,521,280.

On that basis, SKAT paid out divided tax refunds to GOLDSTEIN via GOAL's bank account 34015159, Goal TaxBack Ltd, NatWest Bank, High Street Branch Croydon.

In connection with a control of previous dividend tax refunds, SKAT obtained information via Competent Authority from the US tax authorities, the Department of the Treasury, Internal Revenue Service (the "IRS"). According to the information obtained:

- GOLDSTEIN was established as a pension fund with effect from 1 January 1999[9].
- The pension fund has more than one participant.
- The annual contribution to the pension fund is limited to between USD 12,500 and 53,000[10] per participant, depending on the contributor's age.
- GOLDSTEIN has submitted Form 5500 SF, according to which its assets/funds at the end of the periods and number of participants 2012, 2013, 2014 and 2015 amounted to:

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[11] at year end | DKK calculated | Number of participants |
|---|---|---|---|---|
| 2012[12] | 1,810,676 | 5.6591 | 10,246,797 | 7 |
| 2013[13] | 1,707,383 | 5.4127 | 9,241,552 | 4 |
| 2014[14] | 1,506,646 | 6.1214 | 9,222,783 | 4 |
| 2015[15] | 1,024,610 | 6.83 | 6,998,086 | 4 |

---

[8] Appendix 123-7-2
[9] Appendix 123-7-2
[10] Appendices 123-10-1 to 123-10-3
[11] According to www.nationalbanken.dk
[12] Appendices 123-8-4 to 123-8-6
[13] Appendices 123-9-4 to 123-9-5
[14] Appendices 123-9-4 to 123-9-6
[15] Appendices 123-9-7 to 123-9-9

## 1.2    Dividend tax refunded

With reference to the DK-US double taxation convention, GOAL submitted claims on behalf of GOLDSTEIN and received dividend tax refunds in respect of the following shares:

| SKAT bundle no. | Date of claim | Share | Quantity | Ex date | Total dividend, DKK | Tax refund, DKK |
|---|---|---|---|---|---|---|
| 19414 | 26 Mar 2014 | TDC A/S | 2,200,000 | 07 Mar 2014 | 4,840,000 | 1,306,800 |
| 21814 | 04 Apr 2014 | Danske Bank A/S | 2,000,000 | 19 Mar 2014 | 4,000,000 | 1,080,000 |
| 21814 | 04 Apr 2014 | Novo Nordisk A/S B | 2,000,000 | 21 Mar 2014 | 9,000,000 | 2,430,000 |
| 37214 | 06 May 2014 | Dampskibsselskabet Norden A/S | 215,000 | 24 Apr 2014 | 1,075,000 | 290,250 |
| 109214 | 10 Dec 2014 | Coloplast A/S – B | 350,000 | 05 Dec 2014 | 2,625,000 | 708,750 |
| 21315 | 04 Mar 2015 | Novozymes A/S B | 558,000 | 26 Feb 2015 | 1,674,000 | 451,980 |
| 31415 | 26 Mar 2015 | Novo Nordisk A/S B | 1,200,000 | 20 Mar 2015 | 6,000,000 | 1,620,000 |
| 31415 | 26 Mar 2015 | Danske Bank A/S | 1,100,000 | 19 Mar 2015 | 6,050,000 | 1,633,500 |
| Total | | | | | 35,264,000 | 9,521,280 |

The claims submitted were accompanied by the following documents[16]:
1.  Form 06.003 ENG – Claim to Relief from Danish Dividend Tax
2.  Tax voucher – prepared by GOLDSTEIN's custodian ED&F Man Capital Markets Limited ("ED&F")
3.  Form 6166 from the Internal Revenue Service (IRS) – Certificate of residency in USA (issued by the US tax authorities)
4.  Power of attorney to GOAL

Re 1. In Form 06.003 it is declared that GOLDSTEIN is the beneficial owner of the shares and covered by the DK-US double taxation convention.

Re 2. According to the tax voucher prepared by custodian ED&F, GOLDSTEIN received the net dividends on the shares.

## 1.3    Calculation of investments

Having regard to the requirement that GOLDSTEIN must own the shares at the date of the general meeting (the day before the ex date), the purchase prices paid by GOLDSTEIN for the shares listed in the claims submitted are calculated using the closing price on the last trading day before the ex date[17]:

| SKAT bundle no. | Share | Price date | Quantity | Share price | Calculated purchase price, DKK |
|---|---|---|---|---|---|
| 19414 | TDC A/S | 06 Mar 2014 | 2,200,000 | 52.65 | 115,830,000 |
| 21814 | Danske Bank A/S | 18 Mar 2014 | 2,000,000 | 145.70 | 291,400,000 |
| 21814 | Novo Nordisk A/S B | 20 Mar 2014 | 2,000,000 | 245.80 | 491,600,000 |
| 37214 | Dampskibsselskabet Norden A/S | 23 Apr 2014 | 215,000 | 228.00 | 49,020,000 |
| 109214 | Coloplast A/S – B | 04 Dec 2014 | 350,000 | 527.00 | 184,450,000 |
| 21315 | Novozymes A/S B | 25 Feb 2015 | 558,000 | 322.50 | 179,955,000 |
| 31415 | Danske Bank A/S | 18 Mar 2015 | 1,100,000 | 175.30 | 192,830,000 |
| 31415 | Novo Nordisk A/S B | 19 Mar 2015 | 1,200,000 | 341.90 | 410,280,000 |

---

[16] Appendices 123-11-1 to 123-17-6
[17] The price can be found at Nasdaq's website: http://www.nasdaqomxnordic.com

## 1.4    Registration of Danish shares

All shares in Danish listed companies are registered with VP Securities, which is the central securities depository in Denmark.

The registration is linked to a securities account in the shareholder's name with a Danish bank. The securities account contains the shareholder's shareholdings, which may be composed of shares in various Danish listed companies. The securities account and the assets deposited in it may also have two or more owners (in which case it is known as an omnibus account).

A search of data from VP Securities revealed no securities account with a Danish bank which is registered to GOLDSTEIN as the owner.

## 1.5    Information from the IRS in the USA

Via Competent Authority in Denmark and the USA, SKAT has obtained information from the IRS in the USA.

By letter[18] of 4 December 2015, the IRS informed SKAT:
- That GOLDSTEIN was established on 1 January 1999.

By letter of 13 June 2016, the IRS informed SKAT[19]:
- That the IRS had received information from GOLDSTEIN by way of Form 5500 SF for 2012 and Form 5500 SF for 2015; a copy[20] of the forms was enclosed for SKAT.
- According to the information from the forms received, the assets at the end of the period and the number of participants were as follows:

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[21] at year end | DKK calculated | Number of participants |
|---|---|---|---|---|
| 2012[22] | 1,810,676 | 5.6591 | 10,246,797 | 7 |
| 2015[23] | 1,024,610 | 6.83 | 6,998,086 | 4 |

With its letter of 13 December 2016, the IRS forwarded the company's Form 5500 for 2014 and 2015[24].

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[25] at year end | DKK calculated | Number of participants |
|---|---|---|---|---|
| 2014[26] | 1,506,646 | 6.1214 | 9,222,783 | 4 |
| 2015[27] | 1,024,610 | 6.83 | 6,998,086 | 4 |

---

[18] Appendices 123-7-1 to 123-7-2
[19] Appendices 123-8-1 to 123-8-21
[20] Appendices 123-8-4 to 123-8-9
[21] According to www.nationalbanken.dk
[22] Appendices 123-8-4 to 123-8-6
[23] Appendices 123-9-7 to 123-9-9
[24] Appendices 123-9-1 to 123-9-9
[25] According to www.nationalbanken.dk
[26] Appendices 123-9-4 to 123-9-6
[27] Appendices 123-9-7 to 123-9-9

With regard to general questions about pension plans and contributions to such plans, the IRS provided various links to its website concerning "Topics for Retirement Plans"[28]. According to the website:
- The annual contribution per person is limited to between USD 12,500 and 53,000, depending on the contributor's age (over or under 50 years).

The IRS provided the following general information to SKAT, Competent Authority:
- If a tax-free pension plan engages in business activities (Unrelated Business Income), the income earned from such activities will be taxable and it must submit a Form 990-T to the IRS.
- If a tax-free pension plan receives debt-financed income (Debt-Financed Income), such income will be taxable and it must submit a Form 990-T to the IRS.
- If a pension plan makes distributions, they must be declared to the IRS using Form 1099 and specifying amounts paid and recipients. The recipient must pay taxes on the income and must declare it on his/her tax return.

## 2.  Legal rules

### 2.1   Consolidation acts
The Danish Corporation Tax Act (*selskabsskatteloven*) – Consolidated Acts no. 1082 of 14 November 2012 and no. 680 of 20 May 2015:
- Section 2(1)(c) and 2nd clause of subsection (3)

The Danish Tax Assessment Act (*ligningsloven*) – Consolidated Act no. 405 of 22 April 2013 as amended:
- Section 16A(1)

The Danish Tax at Source Act (*kildeskatteloven*) – Consolidated Act no. 1403 of 7 December 2010 as amended:
- Sections 65(1) and 69B(1)

### 2.2   Double taxation convention
International Executive Order no. 13 of 14 April 2000 concerning convention of 19 August 1999 between Denmark and the USA for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income. As amended by International Executive Order no. 1 of 18 February 2008 concerning Protocol of 2 May 2006:
- Articles 10 and 22

---

[28] Appendices 123-10-1 to 123-10-3

## 3.    SKAT's comments

### 3.1    Statutory/legal basis

A US pension fund which is the beneficial owner of Danish shares and has received dividends from which dividend tax has been withheld at source is eligible for a dividend tax refund if the pension fund satisfies the conditions in article 10 of the DK-US double taxation convention, see the 1st clause of section 69B of the Tax at Source Act.

### 3.2    Ownership of shares and receipt of dividends

GOLDSTEIN stated in the claims submitted concerning the dividend tax refunds that GOLDSTEIN was the owner of the shares in question and that GOLDSTEIN received dividends from which dividend tax had been withheld.

In SKAT's opinion, GOLDSTEIN – with assets/funds at end 2013 through to 2015 amounting to:

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[29] at year end | DKK calculated |
|---|---|---|---|
| 2013[30] | 1,707,383 | 5.4127 | 9,241,552 |
| 2014[31] | 1,506,646 | 6.1214 | 9,222,783 |
| 2015[32] | 1,024,610 | 6.83 | 6,998,086 |

– did not have sufficient capital to make the investments in Danish shares underlying the dividend tax refund claims in question.

Accordingly, in SKAT's opinion, GOLDSTEIN cannot have been the owner of the shares and GOLDSTEIN did not receive the dividends on the shares. In reaching this opinion, SKAT has given weight to the following factors:

### 3.2.1 Securities account

All shares in Danish listed companies are registered with VP Securities, which is the central securities depository in Denmark. The registration is linked to a securities account in the shareholder's name with a Danish bank. The securities account and the assets deposited in it may also have two or more owners (in which case it is known as an omnibus account).

GOLDSTEIN is not registered as the owner of a securities account with a Danish bank. SKAT therefore has no information to the effect that GOLDSTEIN owned the shares for which the dividend tax refunds were granted.

### 3.2.2 Capital available for the pension fund's investments

According to the information provided by the US authorities, the plan is a pension fund with one participant only who may contribute a maximum of USD 12,500/53,000 each year

---

[29] According to www.nationalbanken.dk
[30] Appendices 123-9-4 to 123-9-5
[31] Appendices 123-9-4 to 123-9-6 (Figures from beginning of 2014)
[32] Appendices 123-9-7 to 123-9-9

(approximately DKK 85,375/361,990 in 2015 and DKK 76,501/324,434 in 2014 and DKK 67,658/286,873 in 2013 and DKK 67,659/299,932 in 2012)[33].

SKAT has received Form 5500 SF for each of the years 2012 – 2015, submitted by GOLDSTEIN to the IRS, according to which GOLDSTEIN's assets/funds at end 2012 through to 2015 amounted to:

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[34] at year end | DKK calculated |
|---|---|---|---|
| 2012[35] | 1,810,676 | 5,6591 | 10,246,797 |
| 2013[36] | 1,707,383 | 5.4127 | 9,241,552 |
| 2014[37] | 1,506,646 | 6.1214 | 9,222,783 |
| 2015[38] | 1,024,610 | 6.83 | 6,998,086 |

Based on the tax vouchers received, SKAT has calculated that all of GOLDSTEIN's investments in Danish shares[39] far exceed GOLDSTEIN's capital resources. Among other things, this can be seen from:

- GOLDSTEIN's indication on 18 – 20 March 2014 that it is the owner of shares in Danske Bank A/S and Novo Nordisk A/S B worth a total of DKK 783,000,000[40].

On that basis, in SKAT's opinion, GOLDSTEIN – with the capital resources shown above at end 2013 and 2014 – did not have sufficient capital to make the investments underlying its refund claims.

### 3.2.3 Dividends and dividend tax withheld

According to the tax vouchers submitted, in the period March 2014 through to March 2015, GOLDSTEIN received a total of DKK 35,264,000[41] in dividends, including a total of DKK 9,521,280[42] in dividend tax claimed and refunded. The net dividends per year were as follows:

2014        DKK 15,724,200 (USD 2,568,726)
2015        DKK 10,018,520 (USD 1,466,840)

In SKAT's opinion, the dividends concerning the shares listed in the claims submitted were not received by GOLDSTEIN as, according to Form 5500 submitted to the IRS for the individual years, GOLDSTEIN had the following capital resources at the relevant year ends:

---

[33] Exchange rate end 2015 (683.00) / 2014 (612,14) / 2013 (541.27) / 2012 (565.91), see www.nationalbanken.dk
[34] According to www.nationalbanken.dk
[35] Appendices 123-8-4 to 123-8-6
[36] Appendices 123-9-4 to 123-9-5 (Figures from beginning of 2014)
[37] Appendices 123-9-4 to 123-9-6
[38] Appendices 123-9-7 to 123-9-9
[39] Section 1.3
[40] Section 1.3, bundle no. 21814
[41] Section 1.2
[42] Section 1.2

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate[43] at year end | DKK calculated |
|---|---|---|---|
| 2013[44] | 1,707,383 | 5.4127 | 9,241,552 |
| 2014[45] | 1,506,646 | 6.1214 | 9,222,783 |
| 2015[46] | 1,024,610 | 6.83 | 6,998,086 |

Thus, GOLDSTEIN's assets/funds did not increase by the net dividends. Nor did GOLDSTEIN declare any Unrelated Business Income or Debt-financed Income (Form 990-T) or declare any distributions (Form 1099) to the IRS.

Accordingly, the net dividends from the Danish shares, DKK 25,742,720, cannot have been received by GOLDSTEIN.

### 3.3    Revocation of previous decisions
When claiming the dividend tax refunds, GOLDSTEIN stated that GOLDSTEIN was the beneficial owner of the shares, see Form 06.003, and that GOLDSTEIN had received dividends and paid dividend tax, see the tax vouchers prepared by GOLDSTEIN's custodian ED&F.

SKAT has now established that this pension fund is one of limited capital resources and that GOLDSTEIN did not declare any distributions or the like to the IRS. This means that GOLDSTEIN did not have sufficient capital to make the investments in the Danish shares which underlie GOLDSTEIN's dividend tax refund claims.

As a result, SKAT is of the opinion that GOLDSTEIN cannot have been the owner of the shares and that GOLDSTEIN therefore did not receive the dividends.

On that basis, SKAT finds that GOLDSTEIN does not satisfy the conditions of section 69B of the Tax at Source Act or article 10 of the DK-US double taxation convention. Accordingly, SKAT revokes the decisions.

---

[43] According to www.nationalbanken.dk
[44] Appendices 123-9-4 to 123-9-5
[45] Appendices 123-9-4 to 123-9-6
[46] Appendices 123-9-7 to 123-9-9

## 4.    SKAT's proposed decision

SKAT proposes to revoke the previous decisions concerning dividend tax refunds of DKK 9,521,280 in total from SKAT to GOLDSTEIN as GOLDSTEIN was not entitled to receive the refunds.

The revocation concerns the following refund claims:

|  | Date | Amount refunded |
|---|---|---|
| Claim submitted | 26 March 2014 | 1,306,800 DKK |
| Claim submitted | 4 April 2014 | 3,510,000 DKK |
| Claim submitted | 6 May 2014 | 290,250 DKK |
| Claim submitted | 10 December 2014 | 708,750 DKK |
| Claim submitted | 4 March 2015 | 451,980 DKK |
| Claims submitted | 26 March 2015 | 3,253,500 DKK |
| Total |  | 9,521,280 DKK |

In SKAT's opinion, GOLDSTEIN does not and never did own the shares listed in the claims submitted, and the dividends concerning the shares listed in the claims submitted were not received by GOLDSTEIN.

Moreover, in SKAT's opinion, GOLDSTEIN did not have sufficient capital to make the investments in Danish shares which underlie the divided tax refund claims in question.

According to the tax vouchers submitted, GOLDSTEIN allegedly invested a substantial amount in shares in Danish companies and received dividends on those shares. The information available in the case does not support such substantial investments.

Weight has been given by SKAT to:
- GOLDSTEIN having submitted Form 5500 SF (Short Form) in the USA, according to which its assets/funds and number of participants at end 2012, 2013, 2014 and 2015 amounted to:

| Calendar year: | USD acc. to Form 5500 SF | DKK exchange rate at year end | DKK calculated | Number of participants |
|---|---|---|---|---|
| 2012 | 1,810,676 | 5,6591 | 10,246,797 | 7 |
| 2013 | 1,707,383 | 5.4127 | 9,241,552 | 4 |
| 2014 | 1,506,646 | 6.1214 | 9,222,783 | 4 |
| 2015 | 1,024,610 | 6.83 | 6,998,086 | 4 |

Thus, based on the information that has now become available, SKAT is of the opinion that GOLDSTEIN did not have the financial means to own shares on the scale set out in its dividend tax refund claims. By way of example, this can be seen from:
- GOLDSTEIN's indication on 18 – 20 March 2014 that it was the owner of shares in Danske Bank A/S and Novo Nordisk A/S B worth a total of DKK 783,000,000.

Thus, GOLDSTEIN does not satisfy the conditions for a refund of dividend taxes withheld on Danish shares, see article 10 of the DK-US double taxation convention.

Accordingly, SKAT refunded the dividend tax to GOLDSTEIN on a false basis and, accordingly, SKAT proposes to revoke the previous decisions on dividend tax refunds.

## 5. The pension fund's comments on SKAT's proposed decision

On behalf of GOLDSTEIN, the law firm of Lundgrens has submitted the following comments on SKAT's previous proposed decision of 23 March 2018:

*It is noted by way of introduction that our client is firmly convinced that GOLDSTEIN was the rightful owner of the shares in question and thus the beneficial owner of the shares. Also, our client is firmly convinced that it was entitled to claim the dividend tax refunds and that SKAT's original decision – acknowledging our client's right to receive the refunds in question – must be upheld.*

*STATEMENT OF FACTS*
*GOLDSTEIN has provided SKAT with Form 6166 from the US tax authorities, confirming that GOLDSTEIN is tax resident in the USA and that the pension plan is exempt from US tax liability. Form 6166 and is generally used as confirmation of the above.*

*In 2014 and 2015, GOLDSTEIN, which was established in 1999, purchased shares in Danish listed companies. Those purchases were made via UK brokers, all of which were authorised by the UK financial authorities.*
*For each transaction, SKAT has received confirmation from the relevant broker that GOLDSTEIN purchased the shares in question.*

*SKAT has also received a statement of the account held by GOLDSTEIN with ED&F Man Capital Markets Limited, which shows that the purchase price of the shares was charged to our client's account. Our client received the statement of account directly from ED&F Man Capital Markets Limited.*

*Our client's purchase of Danish shares was thus handled by ED&F Man Capital Markets Limited, which is authorised by the UK financial authorities.*

*Following the purchase of the shares, the Danish companies in question resolved at their general meeting to distribute dividends to their shareholders. In this connection, our client received a dividend credit advice from ED&F Man Capital Markets Limited to notify our client that the dividends had been received, a copy of which has been provided to SKAT. The advice shows that our client received the dividends from the distributing company and that dividend tax had been withheld on the dividends in accordance with the usual rules.*

*The net amount received was credited to our client's account with ED&F Man Capital Markets Limited, and SKAT has received a statement of our client's account with ED&F Man Capital*

*Markets Limited showing that the dividends (less dividend tax withheld) were credited to our client's account.*

*These facts all serve as proof that GOLDSTEIN was the beneficial owner of the shares in question and thus also that the subsequent dividend tax refund claims were correct and justified. Consequently, SKAT's original decisions concerning dividend tax refunds were also correct.*

**SKAT's REASONING**
*SKAT has primarily given the following three reasons for its proposed decision: (i) that our client allegedly was not the owner of the shares; (ii) that the dividend distributions allegedly were not received by our client; and (iii) that our client allegedly did not have sufficient capital to make the investments in question.*

*<u>Re (i) Concerning ownership of shares</u>*
*It is submitted that our client purchased the shares in question which underlie the dividend distributions and the dividend tax refund claims.*

*Usual written confirmation has been provided from our client's broker showing that the purchases in question were actually made.*
*Our client only used brokers which are authorised by the UK financial authorities. Our client has no shared interest with those brokers, whether financially or otherwise, and our client has no reason to believe that the brokers in question did not execute the purchase orders issued by my client. The fact that my client did of course purchase the shares in question is clear from the purchase receipts received by SKAT. There is no reason to disregard this usual documentation.*

*Furthermore, SKAT has received documentation in the form of statements of our client's accounts with ED&F Man Capital Markets Limited, showing that the purchase of the shares in question was paid for and, moreover, SKAT has received documentation of our client's receipt of the dividends in the form of the dividend credit advice, which serves as documentation that the dividends were credited.*

*The documentation in question is in line with what SKAT usually requires and accepts in order for tax payers to claim and be granted a dividend tax refund. In addition, the documentation provided is in line with what SKAT itself recommends claimants to provide when claiming a dividend tax refund, see SKAT's current dividend tax refund claim form.*

*The documentation received by SKAT in this case is thus the very documentation which SKAT recommends claimants to provide when claiming a dividend tax refund, and the documentation produced fully corresponds to the documentation accepted by SKAT as adequate over many years of established practice.*

*<u>Re (ii) Concerning receipt of dividends and withholding of dividend tax</u>*
*SKAT has received the dividend credit advice from ED&F Man Capital Markets Limited, showing that the dividends received were credited to our client's account and that dividend tax had been withheld from the dividends in question.*

*<u>Re (iii) Concerning capital resources</u>*

*SKAT has stated that our client allegedly did not have sufficient capital to make the purchases that resulted in the dividend distributions and thus the dividend tax refund claims.*

*It is not quite clear how SKAT has arrived at this conclusion. It is noted that SKAT does not appear to have considered at a general level the issue of funding of share trading or specifically our client's possibilities of raising external funding for the transactions in question.*

## 6.    SKAT's final decision

On behalf of GOLDSTEIN, the law firm of Lundgrens has stated that GOLDSTEIN was the beneficial owner of the shares in question and entitled to claim the dividend tax refunds.

According to the notice of objection, GOLDSTEIN purchased the shares underlying the dividends received and the dividend tax refunds claimed.

Also according to the notice of objection, usual written confirmation of the purchase from GOLDSTEIN's broker has been produced and, further, SKAT has received documentation in the form of statements of account from ED&F Man Capital Markets Limited showing that the purchase of the shares in question was paid for. In addition, it can be seen from the dividend credit advice that GOLDSTEIN received the dividends and that dividend tax had been withheld.

Finally, the law firm of Lundgrens states that the documentation provided is in line with what SKAT has accepted as adequate over many years of established practice.

The law firm of Lundgrens notes in the notice of objection that in its proposed decision, SKAT finds that GOLDSTEIN did not have sufficient capital to purchase the shares in question. In response, the law firm of Lundgrens comments that SKAT does not appear to have considered at a general level or specifically the issue of funding of share trading, including GOLDSTEIN's concrete possibilities of raising external funding to purchase the shares. However, no information is provided in the notice of objection as to whether GOLDSTEIN raised funding for the share purchases without using any of its own capital.

In connection with a previous control of a dividend tax refund claim from GOLDSTEIN, SKAT received new information from the IRS concerning GOLDSTEIN's assets. Based on the new information, SKAT performed a control of the divided tax refunds previously made to GOLDSTEIN.

GOLDSTEIN's assets show that GOLDSTEIN could not possibly own shares on the scale stated, and SKAT therefore does not believe that the dividend credit advice (tax voucher) is adequate proof that the pension fund owned the shares and received the dividends.

In connection with the previous control of GOLDSTEIN's dividend tax refund claim, SKAT received selected parts of material from the broker ED&F Man Capital Markets Ltd. The documents are incomplete as pages are missing and large parts of the text on the pages received

by SKAT had been crossed out and thus rendered illegible. According to the notice of objection submitted by the law firm of Lundgrens, it can be seen from the material that GOLDSTEIN purchased the shares and received the dividends. However, the notice of objection does not explain how this can be seen from the material. The material received is inadequate and incomplete. It does not prove GOLDSTEIN's ownership of the shares in question or GOLDSTEIN's receipt of dividends.

The law firm of Lundgrens has not disputed that GOLDSTEIN did not have sufficient capital to make the investments in question. It has simply referred to the fact that SKAT has not considered GOLDSTEIN's possibilities of raising external funding to purchase the shares in question. The law firm of Lundgrens has neither stated nor provided any documentation to show that GOLDSTEIN raised external funding to purchase the shares.

The notice of objection submitted by the law firm of Lundgrens was not accompanied by any documentation to show:
- That GOLDSTEIN purchased the shares
- That GOLDSTEIN received dividends on the shares
- That dividend tax was withheld on the dividends

Similarly, the law firm of Lundgrens has provided no documentation to show that GOLDSTEIN had sufficient capital available to make the very substantial investments in Danish shares which underlie the dividend tax refund claims in question.

Thus, GOLDSTEIN has provided no documentation to show that GOLDSTEIN satisfied the conditions for claiming a dividend tax refund for the shares in question.

Accordingly, SKAT is still of the opinion that GOLDSTEIN does not and never did own the shares listed in the refund claims submitted and that the dividends concerning the shares listed in the refund claims submitted were not received by GOLDSTEIN.

Accordingly, SKAT's decision is in accordance with the proposed decision already forwarded.

On behalf of SKAT, the Legal Adviser to the Danish Government will issue proceedings against GOLDSTEIN to recover losses and damages.


**How to appeal**

**If you wish to appeal**
Then send a letter to the Danish Tax Appeals Agency no later than three months after the day when you receive this decision.

State all of the points which your appeal concerns, and describe for each point why you think the decision is wrong. Please enclose the decision and the statement of facts. If you have any

documents which support and substantiate your appeal, please also enclose them. If you would like a meeting with one of the case workers of the Tax Appeals Agency, please state your telephone number in the appeal.

An appeal fee of DKK 400 is charged. If your appeal is allowed in whole or in part, the fee will be reimbursed to you.

### How to submit the appeal and pay
You may submit the appeal:
- electronically using the Tax Appeals Agency's online form at skatteankestyrelsen.dk, where you will also be asked to pay by payment card or MobilePay
- by digital post via borger.dk or virk.dk. Pay by transferring DKK 400 to the account with registration number 0216 and account number 4069029361, and write your name and TIN number in the subject field
- by ordinary post to the Tax Appeals Agency, Ved Vesterport 6, 4th floor, 1612 Copenhagen V, Denmark. Pay by transferring DKK 400 to the account with registration number 0216 and account number 4069029361, and write your name and TIN number in the subject field
- Payment from abroad may be effected by transferring the amount to 0216 (registration number bank) 4069029361 (account number), IBAN DK 0502164069029361, SWIFT DABADKKK

### You may apply for reimbursement of your adviser's fees
If you retain an adviser for purposes of the appeal, you may apply for reimbursement of the adviser's fees in whole or in part, if the case falls within the scope of Part 19 of the Danish Tax Administration Act (*skatteforvaltningsloven*). For more information, see skat.dk/omkostningsgodtgørelse.

### Statutory rules and regulations
You can find the statutes and decisions we refer to at skat.dk/love or skat.dk/afgørelser. For more information/guidance on how to appeal, go to skat.dk/klage or skatteankestyrelsen.dk/english.

Yours faithfully

[*signed*]
**Lars M. Nielsen**
**Specialist consultant**

Email: lars.m.nielsen@skat.dk
Tel.: +45 72 38 41 74

[*signed*]
**Katrine Basballe**
**Subject-matter consultant**

Email: katrine.basballe@skat.dk
Tel.: +45 72 37 02 38

[*signed*]
**Lill Drost**
**Functional manager**

Email: lill.drost@skat.dk

A copy has been sent to Lundgrens Advokatpartnerselskab for the attention of Jakob Schilder-Knudsen and Nicolai B. Sørensen, Tuborg Havnevej 19, 2900 Hellerup, Denmark

## ATTESTATION

I, the undersigned, Annette Jon Rasmussen,
Qualified Translator and Interpreter in the Danish and English languages,
hereby attest the preceding text to be a true and faithful translation of
the attached document in Danish produced to me this 17th day of August 2018.

Witness my hand and official seal



**Annette Jon Rasmussen, Qualified Translator and Interpreter (Danish and English)**
**Member of *Danske Translatører* (Danish Authorised Translators and Interpreters), a member**
**organisation of FIT (Federation of International Translators)**
**Business reg. (CVR) no. 34146403**
**Mariendalsvej 74 st tv**
**DK-2000 Frederiksberg**
**Denmark**
**T: +45 61205213**
**E: mail@annettejonrasmussen.dk**
**W: www.annettejonrasmussen.dk**

BILAG I

SKAT    LUNDGRENS

The Goldstein Law Group PC 401(k) Profit Sharing Plan
C/O Scott Goldstein
615 Hawerstraw Road
Suffern
NY, 10901
USA

Særlig kontrol 3

Kratbjerg 236
3480 Fredensborg
Denmark

www.skat.dk

Dato: 4. maj 2018

Captia nr: 16-1673253

TIN: 13-4030325

# Afgørelse – Tilbagekaldelse af tidligere afgørelser om refusion af udbytteskatter

SKAT har tidligere truffet afgørelser om refusion af udbytteskatter til The Goldstein Law Group PC 401(k) Profit Sharing Plan (GOLDSTEIN) på baggrund af anmodninger fra GOLDSTEIN's agent GOAL TaxBack Limited (GOAL)[1].

SKAT tilbagekalder de tidligere afgørelser om refusion af udbytteskatter på i alt 9.521.280 kr., idet GOLDSTEIN ikke har været berettiget til at modtage udbytteskatten.

Tilbagekaldelsen af afgørelser angår følgende anmodninger:

|  | Dato | Udbytteskat |
|---|---|---|
| Anmodning af | 26. marts 2014 | 1.306.800 kr. |
| Anmodning af | 4. april 2014 | 3.510.000 kr. |
| Anmodning af | 6. maj 2014 | 290.250 kr. |
| Anmodning af | 10. december 2014 | 708.750 kr. |
| Anmodning af | 4. marts 2015 | 451.980 kr. |
| Anmodninger af | 26. marts 2015 | 3.253.500 kr. |
| I alt |  | 9.521.280 kr. |

Det er SKATs vurdering, at GOLDSTEIN ikke ejer eller har ejet de aktier, som fremgår af anmodningerne, og at udbytterne vedrørende de aktier, som fremgår af anmodningerne, ikke er tilgået GOLDSTEIN.

Det er endvidere SKATs vurdering, at GOLDSTEIN ikke har haft den fornødne kapital til at foretage de investeringer i danske aktier, der ligger til grund for de nævnte anmodninger om refusion af udbytteskat.

GOLDSTEIN skulle ifølge de indsendte Tax Vouchers have investeret aktier i danske selskaber for et betydeligt beløb og modtaget udbytter heraf. Sagens oplysninger giver ikke grundlag for sådanne betydelige investeringer.

---

[1] Bilag 123-11-1 til 123-17-6

SKAT har lagt vægt på:

- o At GOLDSTEIN har indsendt FORM 5500 SF (Short Form) i USA, hvor af det frem-
  går, at GOLDSTEIN's aktiver/formue og antal deltagere ultimo 2012, 2013, 2014 og
  2015 var:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[2] ultimo året | DKK beregnet | Antal deltagere |
|---|---|---|---|---|
| 2012[3] | 1.810.676 | 5,6591 | 10.246.797 | 7 |
| 2013[4] | 1.707.383 | 5,4127 | 9.241.552 | 4 |
| 2014[5] | 1.506.646 | 6,1214 | 9.222.783 | 4 |
| 2015[6] | 1.024.610 | 6,83 | 6.998.086 | 4 |

Det er således på baggrund af de nu foreliggende oplysninger SKATs vurdering, at GOLD-
STEIN ikke har haft økonomiske muligheder for at eje aktier i et sådant omfang som angivet i
GOLDSTEIN's ansøgninger om refusion af dansk udbytteskat. Dette fremgår eksempelvis
ved:

- At GOLDSTEIN den 18. til 20 marts 2014, har angivet at være ejer af aktier i Danske
  Bank A/S og Novo Nordisk A/S B til en samlet værdi af i alt DKK 783.000.000[7].

GOLDSTEIN opfylder således ikke betingelserne for at få refunderet indeholdte udbytteskat-
ter af danske aktier, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og
USA.

SKAT har derfor refunderet de nævnte udbytteskatter til GOLDSTEIN på et urigtigt grundlag,
og SKAT tilbagekalder derfor de tidligere afgørelser om refusion af udbytteskatter.

SKATs afgørelse er i overensstemmelse med det tidligere fremsendte forslag, idet GOLD-
STEIN ikke er fremkommet med dokumentation for deres påstande i deres indsigelse af 23.
april 2018.

Kammeradvokaten vil på vegne af SKAT rejse krav om tilbagebetaling og erstatning over for
GOLDSTEIN.

Det kan i øvrigt oplyses, at det er SKATs opfattelse, at udbetalingerne til GOLDSTEIN ind-
går som led i et større internationalt kompleks, som SKAT har anmeldt til Statsadvokaten for
Særlig Økonomisk og International Kriminalitet (SØIK) som formodet svindel mod den dan-
ske stat. SKAT har anmeldt komplekset som omfattet af straffelovens § 279 ved uberettiget
tilbagesøgning af indeholdt udbytteskat, hvor den ansøgende pensionskasse ikke ejer eller har
ejet de aktier, som fremgår af anmodningerne, og hvor udbytterne vedrørende de aktier, som
fremgår af anmodningerne, ikke er tilgået den ansøgende pensionskasse.

For yderligere begrundelse henvises til nedenstående sagsfremstilling og de bilag der blev
fremsendt sammen med SKATs forslag af 23. marts 2018.

---

[2] Fremgår af www.nationalbanken.dk
[3] Bilag 123-8-4 til 123-8-6
[4] Bilag 123-9-4 til 123-9-5 (primotal fra 2014)
[5] Bilag 123-9-4 til 123-9-6
[6] Bilag 123-9-7 til 123-9-9
[7] Aftalt 1.3 bundtnr. 21814

# Sagsfremstilling og begrundelse

## Indholdsfortegnelse

1.    Faktiske forhold ..................................................................................................4

1.1.    Beskrivelse af sagen.........................................................................................4

1.2.    Refunderet udbytteskat ....................................................................................5

1.3.    Beregning af investeringerne ...........................................................................5

1.4.    Registrering af danske aktier ...........................................................................6

1.5.    Oplysninger fra IRS i USA ...............................................................................6

2.    Retsregler .............................................................................................................7

2.1.    Lovbekendtgørelser .........................................................................................7

2.2.    Dobbeltbeskatningsoverenskomst....................................................................7

3.    SKATs bemærkninger ..........................................................................................8

3.1.    Lovgrundlaget/retsgrundlaget ..........................................................................8

3.2.    Ejerskabet af aktier og modtagelse af aktieudbytte .........................................8

3.2.1.    Værdipapirdepot...........................................................................................8

3.2.2.    Kapitalgrundlaget for pensionskassens investeringer ..................................9

3.2.3.    Aktieudbytte og indeholdt udbytteskat ........................................................9

3.3.    Tilbagekaldelse af tidligere afgørelser............................................................10

4.    SKATs forslag til afgørelse ................................................................................11

5.    Pensionskassens bemærkninger til SKATs forslag............................................12

6.    SKATs endelige afgørelse ..................................................................................14

Klagevejledning..........................................................................................................15

Love og regler .............................................................................................................16

# 1. Faktiske forhold

## 1.1.  Beskrivelse af sagen

GOLDSTEIN er registreret som en pensionskasse i USA og er stiftet 1. januar 1999[8].

GOAL har på vegne af GOLDSTEIN, i perioden 26. marts 2014 til 26. marts 2014, sendt anmodninger til SKAT om at få refunderet indeholdte udbytteskatter af danske aktier for i alt DKK 9.521.280.

SKAT har på dette grundlag udbetalt refusion af udbytteskat til GOLDSTEIN via GOAL's bankkonto 34015159, Goal TaxBack Ltd, NatWest Bank, High Street Branch Croydon.

SKAT har i forbindelse med kontrol af tidligere refusioner af udbytteskatter via Kompetent Myndighed indhentet oplysninger fra de amerikanske skattemyndigheder, Department of The Treasury, Internal Revenue Service (herefter IRS). Af oplysningerne fremgår det:

- At GOLDSTEIN er stiftet som pensionskasse pr. 1 januar 1999[9].
- At der er flere deltagere i pensionskassen.
- At det årlige indskud til pensionskassen er begrænset til mellem 12.500 og 53.000[10] USD pr. deltager alt efter indskyders alder.
- At GOLDSTEIN har indsendt FORM 5500 SF, hvoraf det fremgår, at deres aktiver/formue ultimo og antal deltagere 2012, 2013, 2014 og 2015 var:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[11] ultimo året | DKK beregnet | Antal deltagere |
|---|---|---|---|---|
| 2012[12] | 1.810.676 | 5,6591 | 10.246.797 | 7 |
| 2013[13] | 1.707.383 | 5,4127 | 9.241.552 | 4 |
| 2014[14] | 1.506.646 | 6,1214 | 9.222.783 | 4 |
| 2015[15] | 1.024.610 | 6,83 | 6.998.086 | 4 |

---

[8] Bilag 123-7-2
[9] Bilag 123-7-2
[10] Bilag 123-10-1 til 123-10-3
[11] Fremgår af www.nationalbanken.dk
[12] Bilag 123-8-4 til 123-8-6
[13] Bilag 123-9-4 til 123-9-5
[14] Bilag 123-9-4 til 123-9-6
[15] Bilag 123-9-7 til 123-9-9

## 1.2.   Refunderet udbytteskat

Med henvisning til dobbeltbeskatningsoverenskomsten mellem Danmark og USA har GOAL
på vegne af GOLDSTEIN anmodet om og fået refunderet den indeholdte udbytteskat vedrø-
rende følgende aktier:

| SKATs bundt nr. | Dato for anmod-ningen | Aktie | Antal | Ex-dato | Udbytte i alt DKK | Refunderet udbyt-teskat DKK |
|---|---|---|---|---|---|---|
| 19414 | 26-03-2014 | TDC A/S | 2.200.000 | 07-03-2014 | 4.840.000 | 1.306.800 |
| 21814 | 04-04-2014 | Danske Bank A/S | 2.000.000 | 19-03-2014 | 4.000.000 | 1.080.000 |
| 21814 | 04-04-2014 | Novo Nordisk A/S B | 2.000.000 | 21-03-2014 | 9.000.000 | 2.430.000 |
| 37214 | 06-05-2014 | Dampskibsselskabet Norden A/S | 215.000 | 24-04-2014 | 1.075.000 | 290.250 |
| 109214 | 10-12-2014 | Coloplast A/S - B | 350.000 | 05-12-2014 | 2.625.000 | 708.750 |
| 21315 | 04-03-2015 | Novozymes A/S B | 558.000 | 26-02-2015 | 1.674.000 | 451.980 |
| 31415 | 26-03-2015 | Novo Nordisk A/S B | 1.200.000 | 20-03-2015 | 6.000.000 | 1.620.000 |
| 31415 | 26-03-2015 | Danske Bank A/S | 1.100.000 | 19-03-2015 | 6.050.000 | 1.633.500 |
| I alt | | | | | 35.264.000 | 9.521.280 |

Anmodningerne var vedlagt følgende bilag[16]:
1. Blanket 06.003 ENG – Claim to Relief from Danish Dividend Tax.
2. Tax Voucher – udarbejdet af GOLDSTEIN's custodian ED&F Man Capital Markets Limited (ED&F).
3. FORM 6166 from Internal Revenue Service (IRS) – Certificate of resident in USA (udstedt af de amerikanske skattemyndigheder).
4. Power of Attorney to GOAL.

Ad 1. I blanket 06.003 erklæres det, at GOLDSTEIN er den retmæssige ejer af aktierne og er
omfattet af dobbeltbeskatningsoverenskomsten mellem Danmark og USA.

Ad. 2. Ifølge Tax Voucher udarbejdet af custodian ED&F har GOLDSTEIN modtaget netto-
udbytte af aktierne.

## 1.3.   Beregning af investeringerne

Med udgangspunkt i at GOLDSTEIN skal eje aktierne på tidspunktet for generalforsamlings-
dagen (dagen før ex-datoen), er anskaffelsessummerne for GOLDSTEIN's køb af de aktier,
som fremgår af anmodningerne, beregnet på baggrund af lukkekursen på sidste børsdag før
ex-datoen[17]:

| SKATs bundt nr. | Aktie | Kursdato | Antal | Kurs | Beregnet anskaffel-sessum DKK |
|---|---|---|---|---|---|
| 19414 | TDC A/S | 06-03-2014 | 2.200.000 | 52,65 | 115.830.000 |
| 21814 | Danske Bank A/S | 18-03-2014 | 2.000.000 | 145,70 | 291.400.000 |
| 21814 | Novo Nordisk A/S B | 20-03-2014 | 2.000.000 | 245,80 | 491.600.000 |
| 37214 | Dampskibsselskabet Norden A/S | 23-04-2014 | 215.000 | 228,00 | 49.020.000 |
| 109214 | Coloplast A/S - B | 04-12-2014 | 350.000 | 527,00 | 184.450.000 |
| 21315 | Novozymes A/S B | 25-02-2015 | 558.000 | 322,50 | 179.955.000 |
| 31415 | Danske Bank A/S | 18-03-2015 | 1.100.000 | 175,30 | 192.830.000 |
| 31415 | Novo Nordisk A/S B | 19-03-2015 | 1.200.000 | 341,90 | 410.280.000 |

[16] Bilag 123-11-1 til 123-17-6
[17] Kursen fremgår af Nasdaqs hjemmeside: http://www.nasdaqomxnordic.com

## 1.4.  Registrering af danske aktier

Alle aktier i danske børsnoterede selskaber er registreret hos VP Securities, som er den danske værdipapircentral.

Til denne registrering hører et værdipapirdepot i en dansk bank oprettet i en aktionærs navn. Et værdipapirdepot indeholder aktionærens aktiebeholdninger, som kan være sammensat af aktier i forskellige danske børsnoterede selskaber. Et værdipapirdepot og dets beholdning kan også have flere ejere (benævnt et omnibusdepot).

Ved søgning i oplysninger fra VP Securities er der ikke fundet noget værdipapirdepot i en dansk bank, hvor GOLDSTEIN er registreret som ejer.

## 1.5.  Oplysninger fra IRS i USA

SKAT har via Kompetent Myndighed i Danmark og USA modtaget oplysninger fra IRS i USA.

IRS har i brev[18] dateret den 4. december 2015 oplyst:
- At GOLDSTEIN blev stiftet den 1. januar 1999.

IRS har i brev af 13. juni 2016 oplyst[19]:
- At IRS har modtaget oplysninger fra GOLDSTEIN ved FORM 5500 SF for 2012 og FORM 5500 SF for 2015, disse er vedhæftet i kopi[20] til SKAT.
- Det fremgår af oplysningerne fra de modtagne blanketter, at formuerne ultimo og antal deltagere udgør:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[21] ultimo året | DKK beregnet | Antal deltagere |
|---|---|---|---|---|
| 2012[22] | 1.810.676 | 5,6591 | 10.246.797 | 7 |
| 2015[23] | 1.024.610 | 6,83 | 6.998.086 | 4 |

IRS har ved brev af 13. december 2016 vedlagt selskabets FORM 5500 for 2014 og 2015.[24]

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[25] ultimo året | DKK beregnet | Antal deltagere |
|---|---|---|---|---|
| 2014[26] | 1.506.646 | 6,1214 | 9.222.783 | 4 |
| 2015[27] | 1.024.610 | 6,83 | 6.998.086 | 4 |

---

[18] Bilag 123-7-1 til 123-7-2
[19] Bilag 123-8-1 til 123-8-21
[20] Bilag 123-8-4 til 123-8-9
[21] Fremgår af www.nationalbanken.dk
[22] Bilag 123-8-4 til 123-8-6
[23] Bilag 123-9-7 til 123-9-9
[24] Bilag 123-9-1 til 123-9-9
[25] Fremgår af www.nationalbaaken.dk
[26] Bilag 123-9-4 til 123-9-6
[27] Bilag 123-9-7 til 123-9-9

IRS har i forbindelse med generelle spørgsmål om pensionsplaner og indskud herpå fremsendt links til IRS-hjemmeside vedrørende "Topics for Retirement Plans"[28]. Af hjemmesiden fremgår blandt andet følgende:

- o   At det årlige indskud pr. person er begrænset til mellem 12.500 og 53.000 USD alt efter indskyders alder (over eller under 50 år).


IRS har til SKAT, Kompetent Myndighed, generelt oplyst:

- o   At hvis en skattefri pensionsplan driver virksomhed (Unrelated Business Income) skal den betale skat af indtægterne herfra og der skal indgives en Form 990-T til IRS.
- •   At hvis en skattefri pensionsplan har lånefinansieret indkomst (Dept-financed Income) skal der betales skat af indtægterne heraf og der skal indgives en Form 990-T til IRS.
- •   At hvis en pensionsplan udlodder midler skal dette indberettes til IRS på en Form 1099, hvor det skal oplyses hvor meget der er udbetalt og til hvem. Den person, der har modtaget midlerne, er skattepligtig af indtægten og skal selvangive denne.


## 2. Retsregler

### 2.1.   Lovbekendtgørelser
Selskabsskatteloven – lovbekendtgørelse nr. 1082 af 14. november 2012 og nr. 680 af 20. maj 2015:

- •   § 2, stk. 1, litra c og stk. 3, 2. pkt.


Ligningsloven – lovbekendtgørelse nr. 405 af 22. april 2013 med senere ændringer:

- •   § 16 A, stk. 1.


Kildeskatteloven – lovbekendtgørelse nr. 1403 af 7. december 2010 med senere ændringer:

- •   §§ 65, stk. 1 og 69 B, stk. 1.


### 2.2.   Dobbeltbeskatningsoverenskomst
BKI nr. 13 af 14/4 2000 af overenskomst af 19/8 1999 mellem Danmark og USA til undgåelse af dobbeltbeskatning og forhindring af skatteunddragelse for så vidt angår indkomstskatter. Som ændret ved BKI nr. 1 af 18/2 2008 af protokol af 2/5 2006:

- o   Artiklerne 10 og 22.


---

[28]  Bilag 123-10-1 til 123-10-3

## 3.  SKATs bemærkninger

### 3.1.  Lovgrundlaget/retsgrundlaget

En amerikansk pensionskasse, der er den retmæssige ejer af danske aktier, og som har modtaget udbytte, hvoraf der er indeholdt udbytteskat, kan få refunderet udbytteskatten, hvis pensionskassen opfylder betingelserne herfor i art. 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA, jf. kildeskattelovens § 69 B, 1.pkt.

### 3.2.  Ejerskabet af aktier og modtagelse af aktieudbytte

GOLDSTEIN har i ansøgningsskemaer om tilbagebetaling af udbytteskat oplyst, at GOLDSTEIN var ejer af de pågældende aktier, samt at GOLDSTEIN har modtaget aktieudbytte, hvoraf der var indeholdt udbytteskat.

Det er SKATs opfattelse, at GOLDSTEIN med aktiver/formue ultimo 2013 til 2015 på:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[29] ultimo året | DKK beregnet |
|---|---|---|---|
| 2013[30] | 1.707.383 | 5,4127 | 9.241.552 |
| 2014[31] | 1.506.646 | 6,1214 | 9.222.783 |
| 2015[32] | 1.024.610 | 6,83 | 6.998.086 |

ikke har haft den fornødne kapital til at foretage de investeringer i danske aktier, der ligger til grund for de nævnte anmodninger om refusion af udbytteskat.

Det er derfor SKATs vurdering, at GOLDSTEIN ikke kan have været ejer af aktierne, og at GOLDSTEIN ikke har modtaget udbytte af aktierne. SKAT har ved vurderingen heraf lagt vægt på nedenstående punkter:

### 3.2.1. Værdipapirdepot

Alle aktier i danske børsnoterede selskaber er registreret hos VP Securities, som er den danske værdipapircentral. Til denne registrering hører et værdipapirdepot i en dansk bank oprettet i en aktionærs navn. Et værdipapirdepot og dets beholdning kan også have flere ejere (benævnt et omnibusdepot).

GOLDSTEIN er ikke registret som ejer af et værdipapirdepot i en dansk bank. SKAT har derfor ingen oplysninger om, at GOLDSTEIN har ejet de aktier, der er refunderet udbytteskat af.

---

[29] Fremgår af www.nationalbanken.dk
[30] Bilag 123-9-4 til 123-9-5
[31] Bilag 123-9-4 til 123-9-6 (Primotal fra 2014)
[32] Bilag 123-9-7 til 123-9-9

### 3.2.2. Kapitalgrundlaget for pensionskassens investeringer

Ifølge oplysningerne fra myndighederne i USA er der tale om en pensionskasse, hvor der kun er en deltager, som årligt max kan indbetale 12.500/53.000 USD (ca. 85.375/361.990 kr. i 2015 og 76.501/324.434 kr. i 2014 og 67.658/286.873 kr. i 2013 og 67.659/299.932 kr.i 2012)[33].

SKAT har modtaget de af GOLDSTEIN til IRS indsendte FORM 5500 SF for 2012 til 2015, hvoraf det fremgår, at GOLDSTEIN's aktiver/formue ultimo 2012 til 2015 var:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[34] ultimo året | DKK beregnet |
|---|---|---|---|
| 2012[35] | 1.810.676 | 5,6591 | 10.246.797 |
| 2013[36] | 1.707.383 | 5,4127 | 9.241.552 |
| 2014[37] | 1.506.646 | 6,1214 | 9.222.783 |
| 2015[38] | 1.024.610 | 6,83 | 6.998.086 |

SKAT har ud fra de modtagne Tax Vouchers beregnet, at samtlige af GOLDSTEIN's investeringer i danske aktier[39] ligger langt over GOLDSTEIN's kapitalgrundlag. Det fremgår bl.a:
   o At GOLDSTEIN den 18. til 20 marts 2014, har angivet at være ejer af aktier i Danske Bank A/S og Novo Nordisk A/S B til en samlet værdi af i alt DKK 783.000.000[40].

På det grundlag er det SKATs vurdering, at GOLDSTEIN med et kapitalgrundlag ultimo 2013 og 2014, som vist ovenfor, ikke havde den fornødne kapital til at foretage de investeringer, der ligger til grund for GOLDSTEIN's anmodninger.

### 3.2.3. Aktieudbytte og indeholdt udbytteskat
GOLDSTEIN har i perioden marts 2014 og frem til marts 2015 ifølge de indsendte Tax Vouchers fået udbytter for i alt DKK 35.264.000[41], heraf udgør de tilbagesøgte og refunderede udbytteskatter i alt DKK 9.521.280[42]. Nettoudbyttet fordeler sig således pr. år:

2014    15.724.200 kr. (2.568.726 USD)
2015    10.018.520 kr. (1.466.840 USD)

---

[33] Kurs ultimo 2015 (683,00) / 2014 (612,14) / 2013 (541,27) / 2012 (565,91), jf. www.nationalbanken.dk
[34] Fremgår af www.nationalbanken.dk
[35] Bilag 123-8-4 til 123-8-6
[36] Bilag 123-9-4 til 123-9-5 (Primotal fra 2014)
[37] Bilag 123-9-4 til 123-9-6
[38] Bilag 123-9-7 til 123-9-9
[39] Afsnit 1.3
[40] Afsnit 1.3 bundnr. 21814
[41] Afsnit 1.2
[42] Afsnit 1.2

Det er SKATs opfattelse, at udbytterne vedrørende de aktier, som fremgår af anmodningerne, ikke er tilgået GOLDSTEIN, da GOLDSTEIN's kapitalgrundlag ultimo årene, ifølge de indsendte FORM 5500 til IRS, har været:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs[43] ultimo året | DKK beregnet |
|---|---|---|---|
| 2013[44] | 1.707.383 | 5,4127 | 9.241.552 |
| 2014[45] | 1.506.646 | 6,1214 | 9.222.783 |
| 2015[46] | 1.024.610 | 6,83 | 6.998.086 |

GOLDSTEIN's aktiver/formue er således ikke steget med nettoudbytterne. GOLDSTEIN har heller ikke angivet Unrelated Business Income eller Dept-financed Income (Form 990-T) eller oplyst om udlodninger af midler (Form 1099) til IRS.

Nettoudbyttet fra de danske aktier DKK 25.742.720 kan derfor ikke være tilgået GOLD-STEIN.

## 3.3.  Tilbagekaldelse af tidligere afgørelser

GOLDSTEIN har ved anmodningerne om refusion afgivet oplysninger om, at GOLDSTEIN var retmæssig ejer af aktierne, jf. blanket 06.003, og at GOLDSTEIN havde modtaget udbytte og betalt udbytteskat, jf. Tax Vouchers udarbejdet af GOLDSTEIN's custodian ED&F.

SKAT har nu konstateret, at der var tale om en pensionskasse, hvor kapitalgrundlaget har været begrænset, samt at GOLDSTEIN ikke har oplyst om udlodninger eller andet til IRS. Dette betyder, at GOLDSTEIN ikke har haft det fornødne kapitalgrundlag til at foretage investeringer i de danske aktier, på hvilket baggrund GOLDSTEIN har ansøgt om refusion af indeholdte udbytteskatter.

Det er derfor SKATs vurdering, at GOLDSTEIN ikke kan have været ejer af aktierne, og at GOLDSTEIN derfor ikke har modtaget udbytte af aktierne.

SKAT finder på baggrund heraf, at GOLDSTEIN ikke opfylder betingelserne i kildeskattelovens § 69 B, samt artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA. SKAT tilbagekalder derfor afgørelserne.

---

[43] Fremgår af www.nationalbanken.dk
[44] Bilag 123-9-4 til 123-9-5
[45] Bilag 123-9-4 til 123-9-6
[46] Bilag 123-9-7 til 123-9-9

## 4. SKATs forslag til afgørelse

SKAT foreslår, at de tidligere afgørelser om refusion af udbytteskatter på i alt DKK 9.521.280 refunderet fra SKAT til GOLDSTEIN tilbagekaldes, idet GOLDSTEIN ikke har været berettiget til at modtage udbytteskatten.

Tilbagekaldelsen af afgørelser angår følgende anmodninger:

|  | Dato | Udbytteskat |
|---|---|---|
| Anmodning af | 26. marts 2014 | 1.306.800 kr. |
| Anmodning af | 4. april 2014 | 3.510.000 kr. |
| Anmodning af | 6. maj 2014 | 290.250 kr. |
| Anmodning af | 10. december 2014 | 708.750 kr. |
| Anmodning af | 4. marts 2015 | 451.980 kr. |
| Anmodninger af | 26. marts 2015 | 3.253.500 kr. |
| I alt |  | 9.521.280 kr. |

Det er SKATs vurdering, at GOLDSTEIN ikke ejer eller har ejet de aktier, som fremgår af anmodningerne, og at udbytterne vedrørende de aktier, som fremgår af anmodningerne, ikke er tilgået GOLDSTEIN.

Det er endvidere SKATs vurdering, at GOLDSTEIN ikke har haft den fornødne kapital til at foretage de investeringer i danske aktier, der ligger til grund for de nævnte anmodninger om refusion af udbytteskat.

GOLDSTEIN skulle ifølge de indsendte Tax Vouchers have investeret aktier i danske selskaber for et betydeligt beløb og modtaget udbytter heraf. Sagens oplysninger giver ikke grundlag for sådanne betydelige investeringer.

SKAT har lagt vægt på:
- At GOLDSTEIN har indsendt FORM 5500 SF (Short Form) i USA, hvor af det fremgår, at GOLDSTEIN's aktiver/formue og antal deltagere ultimo 2012, 2013, 2014 og 2015 var:

| Kalenderår: | USD iflg FORM 5500 SF | DKK kurs ultimo året | DKK beregnet | Antal deltagere |
|---|---|---|---|---|
| 2012 | 1.810.676 | 5,6591 | 10.246.797 | 7 |
| 2013 | 1.707.383 | 5,4127 | 9.241.552 | 4 |
| 2014 | 1.506.646 | 6,1214 | 9.222.783 | 4 |
| 2015 | 1.024.610 | 6,83 | 6.998.086 | 4 |

Det er således på baggrund af de nu foreliggende oplysninger SKATs vurdering, at GOLD-STEIN ikke har haft økonomiske muligheder for at eje aktier i et sådant omfang som angivet i GOLDSTEIN's ansøgninger om refusion af dansk udbytteskat. Dette fremgår eksempelvis ved:
- At GOLDSTEIN den 18. til 20 marts 2014, har angivet at være ejer af aktier i Danske Bank A/S og Novo Nordisk A/S B til en samlet værdi af i alt DKK 783.000.000.

GOLDSTEIN opfylder således ikke betingelserne for at få refunderet indeholdte udbytteskatter af danske aktier, jf. artikel 10 i dobbeltbeskatningsoverenskomsten mellem Danmark og USA.

SKAT har derfor refunderet de nævnte udbytteskatter til GOLDSTEIN på et urigtigt grundlag, og SKAT foreslår derfor, at tilbagekalde de tidligere afgørelser om refusion af udbytteskatter.

## 5. Pensionskassens bemærkninger til SKATs forslag

Advokatfirmaet Lundgrens har på vegne af GOLDSTEIN fremkommet med følgende bemærkninger til SKATs tidligere forslag af 23. marts 2018:

*Det bemærkes indledningsvist, at det er vores klients faste overbevisning at GOLDSTEIN har været retmæssig ejer af de omhandlede aktier og dermed "beneficial owner" af disse. Det er ligeledes vores klients faste overbevisning at tilbagesøgningerne af den indeholdte kildeskat har været retmæssig, og at SKATs første afgørelse hvorved SKAT anerkendte vores klients ret til at modtage de pågældende udbetalinger – skal stå ved magt.*

*SAGSFREMSTILLING*
*GOLDSTEIN har forsynet SKAT med Form 6166 fra de amerikanske skattemyndigheder, hvorpå bekræftes, at GOLDSTEIN er skattepligtig til USA og at pensionsplanen er undtaget fra amerikansk skattepligt. Form 6166 og er almindeligt anvendt til bekræftelse af disse forhold.*

*GOLDSTEIN, der er stiftet i 1999, har i 2014 og 2015 erhvervet aktier i danske børsnoterede selskaber. Disse køb er sket via engelske børsmæglere, der alle har været autoriseret under de engelske finansmyndigheder.*
*SKAT har for hver handel modtaget den pågældende mæglers bekræftelse på, at GOLDSTEIN har købt de pågældende aktier.*

*SKAT har ligeledes modtaget udskrift af GOLDSTEINs konto hos ED&F Man Capital Markets Limited hvoraf det fremgår, at købesummen for aktierne er blevet debiteret vores klients konto. Vores klient har modtaget kontoudskriften direkte fra ED&F Man Capital Markets Limited.*

*Vores klients køb af danske aktier blev således administreret af ED&F Man Capital Markets Limited, der er autoriseret under de engelske finansmyndigheder.*

*Efter købet af aktierne, vedtog de pågældende Danske selskaber på deres generalforsamling at udlodde udbytte til deres aktionærer. I den forbindelse modtog vores klient fra ED&F Man Capital Markets Limited advisering om modtagelse af det modtagne udbytte i form af en "dividend credit advice", som SKAT ligeledes har modtaget kopi af. Det fremgår heraf, at vores klient har modtaget udbytte fra det udloddende selskab, og at der i samme forbindelse har været indeholdt kildeskat på udbyttebetalingen efter almindelige regler.*

*Det modtagne netto-beløb blev krediteret vores klients konto i ED&F Man Capital Markets Limited, og SKAT har modtaget udskrift af vores klients konto hos ED&F Man Capital Markets Limited hvoraf det fremgår, at udbyttet (efter indeholdt udbytteskat) er blevet krediteret vores klients konto.*

*Disse forhold dokumenterer alle, at GOLDSTEIN har været beneficial owner af de omhandlede aktier og dermed også, at de efterfølgende tilbagesøgninger af indeholdt udbytteskat har været korrekte og retmæssige. På den baggrund er SKATs oprindelige afgørelser om udbetalinger af indeholdt udbytteskat også korrekte.*

## SKATs BEGRUNDELSE

*SKAT har primært begrundet deres forslag med følgende tre forhold: 1) at vores klient ikke skulle have været ejer af aktierne, 2) at udbytteudlodningerne ikke skulle have tilgået vores klient, og 3) at vores klient ikke skulle have haft det fornødne kapitalgrundlag til at foretage de omhandlede investeringer*

### Ad. 1) Vedrørende ejerskab til aktierne
*Det gøres gældende, at vores klient har købt de omhandlede aktier, der ligger til grund for de modtagne udbytter og tilbagesøgningen af den indeholdte kildeskat.*

*Der er fremlagt sædvanlig skriftlig bekræftelse fra vores klients Broker på, at de omhandlede køb er foretaget.*
*Vores klient har alene anvendt Brokere, der er autoriseret hos de engelske finansmyndigheder. Vores klient har intet interessefællesskab med disse Brokere, hverken økonomisk eller på anden vis, og vores klient har intet grundlag for at tro, at de pågældende Brokere ikke skulle have effektueret de købsordrer, min klient afgav. At min klient naturligvis har købt de omhandlede aktier fremgår af de købsbekræftelser, SKAT har modtaget. Der er intet grundlag for at se bort fra denne sædvanlige dokumentation.*

*SKAT har yderligere modtaget dokumentation i form af kontoudskrifter vores klients konti i ED&F Man Capital Markets Limited hvoraf det fremgår, at der er betalt for købet af de omhandlede aktier, ligesom SKAT har modtaget dokumentation for vores klients modtagelse af udbyttet i form af "dividend credit advice", der dokumentere krediteringen af udbytterne.*

*Den omhandlede dokumentation er i overensstemmelse med, hvad SKAT normalt kræver og accepterer for at skatteydere kan søge og få tilbagebetalt indeholdt udbytteskat. Yderligere er den fremsendte dokumentation i overensstemmelse med hvad SKAT selv anbefaler man vedlægger sin ansøgning til udbetaling af indeholdt udbytteskat, jf. SKATs nuværende blanket til brug for tilbagesøgning af indeholdt udbytteskat.*

*Den dokumentation, SKAT har modtaget i nærværende sag, er således nøjagtigt den dokumentation, SKAT anbefaler man vedlægger sin ansøgning, og den fremlagte dokumentation svarer ganske til den dokumentation, som SKAT efter fast praksis i mange år har accepteret som værende tilstrækkelig.*

### Ad. 2) Vedrørende modtagelsen af udbyttet og indeholdelse af kildeskat
*SKAT har modtaget "dividend credit advice" fra ED&F Man Capital Markets Limited der dokumenterer, at vores klient har fået krediteret de modtagne udbytter på sin konto, og at der på de omhandlede udbyttebetalinger har været indeholdt kildeskat.*

### Ad. 3) Vedrørende kapitalgrundlaget
*SKAT har anført, at vores klient ikke skulle have haft tilstrækkeligt kapitalgrundlag til at kunne foretage de køb, som har begrundet udbytteudlodningerne og dermed tilbagesøgningerne af indeholdt kildeskat.*

*Det fremgår ikke klart, hvorledes SKAT er kommet frem til denne konklusion. Det bemærkes, at SKAT ikke synes at have forholdt sig generelt til spørgsmålet om finansiering af aktiehandel eller konkret til vores klients mulighed for at opnå ekstern finansiering af de omhandlede handler.*

## 6. SKATs endelige afgørelse

Advokatfirmaet Lundgrens har på GOLDSTEIN's vegne anført, at GOLDSTEIN har været retmæssig ejer af de omhandlende aktier, og at tilbagesøgningen af den indeholdte kildeskat har været retmæssig.

Det anføres i indsigelsen, at GOLDSTEIN har købt de aktier, der ligger til grund for de modtagne udbytter og for tilbagesøgningen af indeholdt kildeskat.

Det anføres videre, at der er fremlagt sædvanlig skriftlig bekræftelse på købet fra GOLD-STEIN's broker, ligesom det anføres, at SKAT har modtaget dokumentation i form af konto-udskrifter fra ED&F Man Capital Markets Limited, hvoraf det fremgår, at der er betalt for købet af de omhandlede aktier. Derudover fremgår det af en "Dividend Credit Advice", at GOLDSTEIN har modtaget udbyttet, og at der er indeholdt udbytteskat heraf.

Advokatfirmaet Lundgrens anfører endelig, at den fremsendte dokumentation er i overens-stemmelse med, hvad SKAT efter fast praksis i mange år har accepteret som værende til-strækkelig.

Advokatfirmaet Lundgrens bemærker i indsigelsen, at SKAT i sit forslag har fundet, at GOLDSTEIN ikke har haft tilstrækkelig kapitalgrundlag til at kunne foretage de pågældende aktiekøb. Hertil anfører Advokatfirmaet Lundgrens, at SKAT ikke synes at have forholdt sig hverken generelt eller konkret til spørgsmålet om finansiering af aktiehandel, herunder GOLDSTEIN's konkrete mulighed for at opnå ekstern finansiering af aktiekøbene. Det oply-ses dog ikke i indsigelsen, om GOLDSTEIN har opnået finansiering til køb af aktier uden anvendelse af egenkapital.

SKAT har i forbindelse med en tidligere kontrol af en anmodning fra GOLDSTEIN om refu-sion af udbytteskat modtaget nye oplysninger fra IRS om GOLDSTEIN's formueforhold. SKAT har på baggrund af de nye oplysninger udført kontrol af GOLDSTEIN's tidligere re-funderede udbytteskatter.

GOLDSTEIN's formue viser, at GOLDSTEIN ikke har kunnet eje aktier i et sådan omfang som oplyst, hvorfor SKAT ikke finder, at Dividend Credit Advice (Tax Voucher) er tilstræk-kelig dokumentation for, at pensionskassen har ejet aktierne og modtaget aktieudbyttet.

SKAT har i forbindelse med den tidligere kontrol af GOLDSTEIN's anmodning om refusion af udbytteskat modtaget udvalgte dele af materiale fra brokervirksomheden ED&F Man Capi-tal Markets Ltd. Udskrifterne er mangelfulde, idet der mangler sider, ligesom en stor del af teksten på de sider, som SKAT modtog, var gjort ulæselige med overstregninger. Ifølge Ad-vokatfirmaet Lundgrens indsigelse fremgår det af materialet, at GOLDSTEIN har købt aktier-ne og modtaget aktieudbytterne. Der er dog ikke i indsigelsen redegjort for, hvordan dette fremgår af materialet. Det modtagne materiale er ufyldestgørende og mangelfuldt. Det doku-menterer ikke GOLDSTEIN's ejerskab af de pågældende aktier eller GOLDSTEIN's modta-gelse af aktieudbytte.

Advokatfirmaet Lundgrens har ikke bestridt, at GOLDSTEIN ikke har haft et tilstrækkeligt kapitalgrundlag til at kunne foretage de pågældende investeringer. De har alene henvist til, at SKAT ikke har forholdt sig til GOLDSTEIN's mulighed for at opnå ekstern finansiering af de omhandlede handler. Advokatfirmaet Lundgrens har hverken oplyst eller dokumenteret, at GOLDSTEIN har opnået ekstern finansiering til køb af aktierne.

Advokatfirmaet Lundgrens har ikke med sin indsigelse fremlagt dokumentation for:
- At GOLDSTEIN har købt aktierne.
- At GOLDSTEIN har modtaget udbytte af aktierne.
- At der er indeholdt udbytteskat af aktieudbytterne.

Tilsvarende har Advokatfirmaet Lundgrens ikke fremlagt dokumentation for, at GOLDSTEIN har haft den fornødne kapital til rådighed, til at foretage de meget betydelige investeringer i danske aktier, der ligger til grund for de omhandlede anmodninger om refusion af udbytteskat.

GOLDSTEIN har derfor ikke dokumenteret, at GOLDSTEIN opfyldte betingelserne for at få refunderet indeholdte udbytteskatter af de pågældende aktier.

Det er derfor fortsat SKATs vurdering, at GOLDSTEIN ikke ejer eller har ejet de aktier, som fremgår af anmodningerne om refusion, og at udbytterne vedrørende aktierne, som fremgår af anmodningerne, ikke er tilgået GOLDSTEIN.

SKAT træffer derfor afgørelse i overensstemmelse med det tidligere fremsendte forslag.

Kammeradvokaten vil på vegne af SKAT rejse krav om tilbagebetaling og erstatning over for GOLDSTEIN.


## Klagevejledning

### Hvis I vil klage
Så skal I skrive til Skatteankestyrelsen senest tre måneder efter den dag, hvor I har fået denne afgørelse.

Skriv alle de punkter, I vil klage over, og begrund for hvert punkt, hvorfor I mener, afgørelsen er forkert. Vedlæg afgørelsen og sagsfremstillingen. Har I dokumenter, som støtter og underbygger jeres klage, beder vi jer også vedlægge dem. Hvis I ønsker et møde med en sagsbehandler i Skatteankestyrelsen, skal I skrive dit telefonnummer i klagen.

Det koster 400 kr. at klage. Hvis I får helt eller delvist ret i jeres klage, får I pengene tilbage.

### Sådan sender I klagen og betaler
I kan sende klagen
- elektronisk via Skatteankestyrelsens klageformular på skatteankestyrelsen.dk, hvor I samtidig bliver bedt om at betale med betalingskort eller Mobile Pay.
- som digital post via borger.dk. cller virk.dk. Betal ved at overføre 400 kr. til kontoen med registreringsnr. 0216 og kontonr. 4069029361, og skriv jeres navn og TIN-nr. i meddelelsesfeltet.

- som brev til Skatteankestyrelsen, Ved Vesterport 6, 4. sal, 1612 København V. Betal ved at overføre 400 kr. til kontoen med registreringsnr. 0216 og kontonr. 4069029361, og skriv jeres navn og TIN-nr. i meddelelsesfeltet.
- Betaling fra udlandet kan ske ved overførsel af beløbet til 0216 (registreringsnummer bank) 4069029361 (kontonummer), IBAN DK 0502164069029361, SWIFT DA-BADKKK.

**I kan søge om at få betalt jeres rådgiver**

Hvis I får en rådgiver til at hjælpe med klagesagen, kan I søge om at få rådgivningen betalt helt eller delvist, hvis sagen er omfattet af reglerne i skatteforvaltningslovens kapitel 19. Der kan læses mere om denne mulighed på skat.dk/omkostningsgodtgørelse.

**Love og regler**

De love og afgørelser, der er henvist til, kan findes på skat.dk/love eller skat.dk/afgørelser. Yderligere information/vejledning i at klage kan hentes på skat.dk/klage eller skatteankesty-relsen.dk/english.

Venlig hilsen

**Lars M. Nielsen**
Specialkonsulent

E-mail: lars.m.nielsen@skat.dk
Telefon nr.: (+45) 72 38 41 74

**Katrine Basballe**
Fagkonsulent

E-mail: katrine.basballe@skat.dk
Telefon nr.: (+45) 72 37 02 38

**Lill Drost**
Funktionsleder

E-mail: lill.drost@skat.dk

Kopi er sendt til Lundgrens Advokatpartnerselskab, att.: Jakob Schilder-Knudsen and Nicolai B. Sørensen, Tuborg Havnevej 19, 2900 Hellerup, Denmark