UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND                    18-md-2865 (LAK)
LITIGATION

This document applies to:  18-cv-05053; 18-cv-05374;
18-cv-08655; 18-cv-09797; 18-cv-10100.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

Appearances:

> Martin H. Kaplan
> Kari Parks
> GUSERAE KAPLAN NUSBAUM PLLC
>
> *Attorneys for Defendants–Third-party Plaintiffs–Counterclaim Defendants The Goldstein Law Group PC 401(K) Profit Sharing Plan and Sheldon Goldstein*
>
> John C. Blessington
> Brandon R. Dillman
> K&L GATES LLP
>
> *Attorneys for Defendants–Third-party Plaintiffs–Counterclaim Defendants DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates 401(K) LLC Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan, and Newsong Fellowship Church 401(k) Plan*
>
> Bryan Skarlatos
> Eric Smith
> KOSTELANETZ & FINK LLP
>
> *Attorneys for Defendants–Third-party Plaintiffs–Counterclaim Defendants Del Mar Asset Management Savings and Retirement Plan and Federated Logistics LLC 401(K) Plan*

Neil S. Binder
M. Tomas Murphy
BINDER & SCHWARTZ LLP

*Attorneys for Third-party Defendant–Counterclaimant ED&F Man
Capital Markets, Ltd.*

LEWIS A. KAPLAN, *District Judge.*

Danish law requires that Danish companies withhold a percentage of dividends for tax purposes.[1] Pursuant to a double-taxation treaty, U.S. pension plans that are exempt from taxation in the United States may claim refunds from Denmark for tax withheld from dividends on shares they own. They do this by filing refund applications with Skatteforvaltningen ("SKAT"), the Danish tax authority.

SKAT claims that something was rotten in the state of Denmark. Several years ago, SKAT alleges, it discovered that hundreds of pension plans filed fraudulent refund applications in which they overstated the extent of their Danish stock holdings in order to inflate the size of their tax refunds. According to SKAT, the pension plans stole roughly $2.1 billion in this manner. SKAT sued hundreds of these pension plans for fraud. Those lawsuits filed in federal courts have been consolidated before this Court for pretrial purposes in this multidistrict litigation ("MDL").

Some of the pension plans allege to have conducted their trading activity through broker-dealers. One such broker-dealer was ED&F Man Capital Markets Limited ("ED&F Man"), a U.K. entity. As relevant here, three groups of pension plans sued by SKAT, as well as affiliated

---

[1]     For a more detailed background on this litigation, see *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 307-09 (S.D.N.Y. 2019); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020); *In re SKAT Tax Refund Scheme Litig.*, No. 18-cv-5053 (LAK), 2020 WL 400718, at *1-2 (S.D.N.Y. Jan. 23, 2020).

parties, claim to have retained ED&F Man: the Goldstein Group,[2] the DW Construction Group,[3] and the Del Mar Group.[4]  The members of these groups, which collectively are referred to as the "third-party plaintiffs," filed third-party complaints against ED&F Man alleging that it is responsible for any wrongdoing perpetrated against SKAT.  In their view, if they are liable to SKAT, ED&F Man must be liable to them.  Separately, but based on related claims of misconduct, SKAT sued ED&F Man in the United Kingdom.

In response to the third-party complaints, ED&F Man in some sense has pointed the finger back at the third-party plaintiffs.  It has filed counterclaims against them for indemnification. According to its amended counterclaims, which are materially identical, ED&F Man operated as the third-party plaintiffs' broker-dealer pursuant to their respective Custody Agreements.[5]  The Custody Agreements, which are incorporated by reference into the third-party complaints, and for all material purposes also are identical, state that the third-party plaintiffs (specifically, the pension plans) agree to indemnify ED&F Man "fully and effectively . . . against each liability, loss and cost which may

---

[2] The Goldstein Group consists of the Goldstein Law Group 401(k) Profit Sharing Plan and Sheldon Goldstein.  *See* Dkt. 323 (counterclaim), Dkt. 339 (motion to dismiss).

[3] The DWC Group consists of DW Construction, Inc. Retirement Plan, Kamco Investments, Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates Defined Benefit Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan, and Newsong Fellowship Church 401(k) Plan.  *See* Dkts. 324-325 (counterclaims), Dkt. 343 (motion to dismiss). Stacey Kaminer, Joan Schulman, David Schulman, and Alexander Jamie Mitchell III are named also in the counterclaims, but the motion is not filed on their behalf.

[4] The Del Mar Group consists of the Del Mar Asset Management Savings and Retirement Plan and Federated Logistics LLC 401(k) Plan.  *See* Dkt. 326 (counterclaim), Dkt. 346 (motion to dismiss).  David Freelove is named also in the counterclaim, but the motion is not filed on his behalf.

[5] *See, e.g.*, Dkt. 323 ¶ 1.

be suffered or incurred by" ED&F Man in connection with "the Client Property, [the Custody Agreement], or the performance of [ED&F Man's] obligations under [the] Agreement."[6]  The subsequent clause of the Custody Agreements, which ED&F Man's counterclaims fail to mention, states that the indemnity just described "shall not extend to any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F Man]."[7]

> The counterclaims discuss also, and include as attachments, ED&F Man's Terms and Conditions.  These state that the pension plans agree to indemnify ED&F Man against "any loss, liability, costs and expenses" incurred "either directly or indirectly in the due performance of [its] obligations."[8]  In a different provision – one that ED&F Man fails also to mention in its counterclaims – the Terms and Conditions state that ED&F Man will not be liable for "any direct or indirect losses, damages, costs or expenses incurred or suffered by [the signatory] unless arising directly from [ED&F Man's] . . . negligence, wilful deceit or fraud."[9]

> Although the counterclaims are materially identical, each of the three groups of third-party plaintiffs moved separately to dismiss them.[10]  For the following reasons, their motions are

---

[6]
> See, e.g., id. ¶ 23.

[7]
> Dkt. 219-6 at 16.

[8]
> See, e.g., id. ¶ 28.

[9]
> Dkt. 323-2 at 38.  Whether this provision limits indemnity is debatable but ultimately immaterial for present purposes.

[10]
> The failure of the third-party plaintiffs to file a joint motion to dismiss is vexing.  The three groups are not adverse to each other, and the counterclaims against them are materially identical.  There is no apparent reason that all three of them needed to file separate motions, each with its own memorandum raising substantially similar arguments, as well as hundreds of pages of declarations and exhibits.  This is a waste of judicial resources – to say nothing

granted.

*Discussion*

Across their three motions, the third-party plaintiffs raise two non-frivolous arguments for dismissal: that (1) ED&F Man's indemnification claims have not yet accrued or otherwise are not ripe for adjudication, and (2) the contracts do not indemnify ED&F Man for its own intentional or negligent wrongdoing, which the third-party plaintiffs contend would be required here if ED&F Man suffered any type of liability or loss sufficient to trigger the indemnification clauses.[11]  All three groups raise the second argument.[12]  However, the Del Mar Group raises only that argument.[13]  It does not raise the accrual/ripeness point.

For reasons that will become apparent, the Court agrees with the first argument – that the indemnification claims have not accrued and are unripe.  Because the Del Mar Group fails to

---

of the resources of the parties involved.  Counsel for the third-party plaintiffs are advised not to do anything like this again.

[11]

The Goldstein Group raises several other arguments, each of which is denied as frivolous. One is that the Court should find that ED&F Man's counterclaim "flatly contradicts its sworn pleadings in the [U.K. litigation involving SKAT]" as well as other filings in this MDL and therefore "warrants no weight at all."  Goldstein Mem. 14.  It would be inappropriate for the Court to determine, in the course of resolving a motion to dismiss in which the pleadings are presumed true, whether ED&F Man's assertions have been inconsistent and, if so, which assertions in fact are accurate.

The Goldstein Group argues also that the counterclaim for indemnification is "so vague" that the parties cannot understand it and it "violates the most basic notice requirements." *Id.* at 17.  The Court has faith that the Goldstein Group will try its best, as it does when it spends the next fifteen pages of its memorandum responding to the counterclaim.

[12]

*See* Dkts. 323-325.

[13]

*See* Dkt. 326.

6

raise that argument, resolving its motion solely on its own terms would require assessing the possible defects of an indemnification claim that the Court concludes is too speculative to adjudicate at this time.  To avoid this pointless analysis, and because part of the problem with the claims is that they are unripe and therefore fail for a lack of subject matter jurisdiction, the Court considers the accrual/ripeness argument *sua sponte* with respect to the Del Mar Group.[14]

ED&F Man's opposition memorandum suggests that its indemnity claims seek the recovery of two types of costs in connection with these third-party proceedings and the U.K. proceedings brought by SKAT: (1) those it may incur in the future, such as a liability judgment or attorneys' fees, and (2) unspecified costs and attorneys' fees it allegedly has incurred already.  The Court begins with the first category.

## I.    Indemnity for Possible Future Liability or Other Possible Future Costs

Before the Court can consider whether a claim for indemnification has accrued, it must determine which jurisdiction's law applies to the accrual issue.  That analysis begins with the question of whether the accrual of a common law indemnification claim brought in federal court is governed by federal law or state law.

At least historically, courts sometimes have held that "if the governing law [*i.e.*, state

---

[14]

*See, e.g.*, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) ("[A] challenge to subject matter jurisdiction cannot be waived and may be raised [either by motion or] *sua sponte*." (citation omitted, brackets in original)).

The third-party plaintiffs frame the accrual issue strictly as a ripeness problem.  As explained below, the Court agrees with that framing with respect to some aspects of ED&F Man's counterclaims, but it concludes that other defects are better viewed as a failure to state a legally sufficient claim.  It nonetheless grants the motions alternatively under Rules 12(b)(1) and 12(b)(6).  *See* note 24, *infra*.

law] recognizes a substantive claim [including one for indemnification], its accrual and the method of its presentation are properly regarded as procedural [issues and, thus, are governed by federal law]."[15]  However, despite some prior uncertainty, the Second Circuit has clarified in recent years that the question of whether an indemnification claim has accrued is a question of state law.[16]  This is so because the existence of the right to indemnification calls for the interpretation of a contract, and such questions are governed by state law.[17]

The next question, which no party addresses, is which state's law applies to the indemnification claims.  The Goldstein Group largely ignores the issue, but to the limited extent that the relevant portion of its brief stays on the topic of claim accrual, it relies on federal cases applying federal law.[18]  The DW Construction Group takes no position on the correct law but cites to cases

---

[15]

    *In re Bank of N.Y. Mellon Forex Transactions Litig*, 42 F. Supp. 3d 520, 526 (S.D.N.Y. 2014) (quoting 3 MOORE'S FEDERAL PRACTICE 14–32 (3d ed. 2014)) (citing cases).

[16]

    *See Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 126 (2d Cir. 2019) (looking to New York law to determine whether an indemnification claim has accrued); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 179-80 (2d Cir. 2005) (stating, under New York law, that "[p]laintiff may not be indemnified for an amount it does not yet owe"); *Hutton Const. Co. v. Cty. of Rockland*, 52 F.3d 1191, 1193 (2d Cir. 1995) ("As the district court correctly noted, however, under New York law, no liability existed until it was fixed by a judgment or a fair settlement.").

[17]

    *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) ("Ordinarily, a claim for contractual indemnification only accrues once the indemnitee has suffered a loss, i.e., made a payment," but "because an express contract for indemnity remains a contract, it is ultimately a question of contract interpretation whether the indemnitee is required to make a payment prior to seeking indemnification.").

[18]

    *See* Goldstein Mem. at 19 (quoting *FSP, Inc. v. Societe Generale*, No. 02-cv-4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003)).

applying federal law, New York law, and Utah law and notes that each is the same.[19]  ED&F Man states in a footnote to the facts section of its memorandum that the Custody Agreement and the Terms and Conditions contain U.K. choice of law clauses.[20]  But it does not argue that those clauses apply to the accrual issue.  Rather, it argues that the issue is governed by federal law, and all of its citations are to federal cases applying federal law.[21]  "The law of the forum state governs where, as here, [no] party alleges that the law of a different state would control and differs from New York law."[22]

With the applicable law determined, the analysis is simple.  "Under New York law, a cause of action for contractual indemnification 'does not arise until liability is incurred by way of

---

[19]

DW Construction Group Mem. at 10-11 & n.10.  Some members of the DW Construction Group were sued originally in Utah federal court and Utah law plausibly could apply to the claims against them.  Others were sued originally in Pennsylvania federal court.

[20]

ED&F Man Mem. at 5 n.5; *see also id.* at 18 (arguing in a different context that because of these clauses, U.K. law will apply to the allocation of attorneys' fees in the U.K. action and in this MDL).

[21]

*Id.* at 15-17 (arguing that its claims have accrued because "courts in the Second Circuit have held that counterclaims for contribution and/or indemnification may be heard – and, for reasons of judicial economy, should be heard – in the same proceeding where primary liability is being adjudicated").

[22]

*See, e.g.*, *City of Long Beach v. Total Gas & Power N. Am., Inc.*, No. 19-cv-8725 (LAK), 2020 WL 3057796, at *10 (S.D.N.Y. June 8, 2020) (quoting *VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 262 n.48 (S.D.N.Y. 2004)).

In addition to failing to argue that U.K. law applies to the accrual issue and is different than the law of the forum, ED&F Man has not cited any decisions applying U.K. law to this issue or even made an assertion regarding the content of U.K. law.  "Where, as here, there is a failure of proof of foreign law, the court may presume that it is the same as local law."  *In re Parmalat*, 383 F. Supp. 2d 587, 595 (S.D.N.Y. 2005) (citing *Fairmont Shipping Corp. v. Chevron Int'l Oil Co.*, 511 F.2d 1252, 1261 n.16 (2d Cir. 1975); *Bartsch v. Metro–Goldwyn–Mayer, Inc.*, 391 F.2d 150, 155 n.3 (2d Cir. 1968); Fed. R. Civ. P. 44.1).

actual payment' to a third party.[23]  Because ED&F Man does not allege that it has incurred any liability, no claim for indemnification has accrued.[24]  Likewise, no claim for indemnification has accrued with respect to any other possible future expenses that ED&F Man may bear in connection with its contracts, such as attorneys' fees or litigation costs.

II.     *Indemnity for Attorneys' Fees and Costs Already Incurred*

Although the focus of its counterclaims is on possible future liability, ED&F Man raises one tangential point in its memorandum that merits some attention.  The concluding paragraph of its accrual argument asserts that at least part of the indemnity claims have accrued because ED&F Man "has already incurred significant litigation costs in both the MDL and the [U.K. action], costs of which the [third-party plaintiffs] are contractually obliged to indemnify 'on demand.'"[25] The "on

---

[23]

> *Lehman*, 916 F.3d at 126 (quoting *Varo, Inc. v. Alvis PLC*, 691 N.Y.S.2d 51 (1st Dep't 1999)); *see also Mid-Hudson*, 418 F.3d at 179-80 (stating, under New York law, that "[p]laintiff may not be indemnified for an amount it does not yet owe"); *Hutton*, 52 F.3d at 1193 ("As the district court correctly noted, however, under New York law, no liability existed until it was fixed by a judgment or a fair settlement."); *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 150 (S.D.N.Y. 2004) (applying New York law to this issue and stating its requirement that "a party must establish that the amount claimed is fixed").

[24]

> The third-party plaintiffs argue that an indemnification claim that has not yet accrued must be dismissed as unripe under Rule 12(b)(1).  Although the case law surrounding the proper rule for dismissing an indemnification claim that suffers from this defect is sparse and mixed, the Court finds that the appropriate vehicle for this challenge, at least on these facts and with respect to the portion of the indemnity claim discussed thus far, is Rule 12(b)(6).  The defect in these claims is that, because no liability has been incurred and no payment therefore has been made, the injury element of the indemnity cause of action is missing.  But whatever the proper framing, the outcome is the same so long as the dismissal under Rule 12(b)(6) is without prejudice.  The Court therefore grants the motions to dismiss these claims under Rule 12(b)(6) without prejudice to refiling if a claim for indemnification later accrues and, alternatively, under Rule 12(b)(1) on ripeness grounds.

[25]

> ED&F Man Mem. at 17.

demand" language comes from a provision of the Custody Agreements, cited to but not otherwise discussed by ED&F Man, stating that the pension plans "shall on demand reimburse [ED&F Man's] reasonable Costs and Expenses properly incurred in connection with this Agreement."[26]  "Costs and Expenses" is defined to mean "costs, charges, losses, liabilities, expenses and other sums (including legal, accountants' and other professional fees) and any Tax thereon."[27]  There is thus a question of whether ED&F Man can recover via its indemnification claims any attorneys' fees and litigation costs it already has paid in connection with the Custody Agreements.

At the outset, the Court finds it plausible that the Custody Agreements entitle ED&F Man to recover attorneys' fees and litigation costs from the pension plans so long as they are "properly incurred in connection with [the] Agreement."  New York courts require an "unmistakably clear" statement before departing from the "well-understood rule that parties are responsible for their own attorney's fees."[28]  Subject to limitations for fraud and negligence, the Custody Agreements indemnify ED&F Man "against each liability, loss and cost" it may incur in connection with the performance of its obligations.[29]  Standing alone, this is not an unmistakably clear statement entitling ED&F Man to attorneys' fees.  But the "on demand" provision specifically references "legal . . . fees" and arguably presumes that they are covered by the indemnification provision.  While other readings of the Custody Agreements may be plausible, the Court is unwilling to conclude at this

---

[26]     Dkt. 219-6 at 12.

[27]     *Id.* at 2.

[28]     *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989).

[29]     *See, e.g.*, Dkt. 323 ¶ 23.

stage of the litigation that those agreements fall short of New York's clear statement rule.

That said, ED&F Man is not out of the woods yet.  Although any amounts it already has paid are fixed, and its claims to those amounts therefore have accrued (unlike its claims to future amounts not yet incurred), those claims are not necessarily justiciable.  "To be justiciable, a cause of action must be ripe – it must present 'a real, substantial controversy, not a mere hypothetical question.'"[30]  "Ripeness 'is peculiarly a question of timing.'"[31]  "A claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[32]  "The doctrine's major purpose 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"[33]

Whether ED&F Man will be entitled to recover attorneys' fees and costs via the Custody Agreements turns entirely on contingent future events – namely, the outcome of the third-party actions and the U.K. proceeding.  The reimbursement provisions apply only to "reasonable Costs and Expenses *properly incurred in connection with this Agreement*."  As noted previously, the indemnity provisions of the Custody Agreements "shall not extend to any liability, loss or cost arising out of the wilful default, fraud or negligence of [ED&F Man]."[34]  In the United Kingdom, SKAT's claims against ED&F Man, in ED&F Man's words, are "based on alleged negligent

---

[30]  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).

[31]  *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

[32]  *Id.* (quoting *Thomas*, 473 U.S. at 580-81).

[33]  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

[34]  Dkt. 219-6 at 16.

misrepresentation . . . [and] unjust enrichment."[35]  And the third-party claims against it in this MDL

sound in fraud and negligence because their premise is that ED&F Man, rather than the third-party

plaintiffs, is responsible for any fraudulent or negligent conduct surrounding false tax refund

applications alleged in SKAT's complaints.[36]  If ED&F Man were to lose in the United Kingdom

or in these third-party proceedings, it likely would not be entitled to recover its fees and costs by

way of the Custody Agreements.[37]

---

[35]

ED&F Man Mem. at 21.

[36]

*See* Dkt. 219 at 10-12 (Goldstein Group third-party complaint, raising claims for fraud, negligent misrepresentation, unjust enrichment, and money had and received), Dkt. 172 (third-party complaint by certain DW Construction Group parties, raising claims sounding in fraud and negligence for breach of contract, breach of fiduciary duty, promissory estoppel, unjust enrichment, indemnification, and apportionment of fault), Dkt. 173 (similar, for other DW Construction Group parties), Dkt. 220 (Del Mar Group third-party complaint, raising claims for fraud and negligent misrepresentation and related contract claims).

[37]

ED&F Man argues, in a portion of its memorandum that has nothing to do with the claim accrual issue, that it is possible that SKAT could prevail on its unjust enrichment claim but fail on its negligent misrepresentation claim.  ED&F Man Mem. at 21.  If so, ED&F Man contends, there will have been no finding of fraud or negligence and it will be entitled to indemnity for any judgment, fees, or litigation costs.  But ED&F Man has not attempted to explain how the U.K.'s attorneys' fee doctrine, which under many circumstances requires the losing party to pay the winner's attorneys' fees, would apply if SKAT secured a partial victory.  In fact, its only discussion of that doctrine relies on two dated Southern District decisions stating merely that in the United Kingdom, there is an unexplained "strong presumption" that the losing party pays the winner's fees.  *Id.* at 18.  Nor has ED&F Man attempted to explain whether or how SKAT could prevail on the unjust enrichment claim without a finding of intentional wrongdoing or negligence by ED&F Man.  The Court is skeptical that SKAT could so prevail without nullifying the indemnification agreements. The premise of the unjust enrichment claim, according to SKAT's U.K. filings, is that, "[a]s a result of the ED&F Man [submissions] in respect of which ED&F Man issued Tax Vouchers, ED&F Man received fees and other payments [that it should not have received]." Dkt. 350-4 at 1.  In other words, the theory is that ED&F Man's enrichment was unjust *because* it submitted false tax filings – a conclusion that appears to require a finding of negligence or intentional wrongdoing.  That said, the Court need not pass on this hypothetical in light of ED&F Man's failure to prove the content of the U.K. fee shifting doctrine.  *See* sources cited in note 22, *supra*.

Even if ED&F Man prevailed in these actions, its own arguments suggest that it perhaps would not be entitled to recover attorneys' fees via these indemnification claims.  Although it ignores these issues in the accrual section of its memorandum, ED&F Man argues elsewhere that it "will be entitled to indemnification for the costs of its defense – including litigation expenses and attorneys' fees incurred" – under a rule applied by U.K. courts that the losing party pays the prevailing party's attorneys' fees.[38]  It contends that this rule would apply not only in the U.K. litigation, but also in these MDL proceedings by way of the choice of law provisions in the Custody Agreements.[39]  Assume that ED&F Man is correct about the content and applicability of U.K. law and that it wins its lawsuits.  This would mean that the losing parties – SKAT in the United Kingdom and the third-party plaintiffs in this MDL – would be required to pay its costs and fees *by operation of U.K. law*.  An indemnification claim therefore would become redundant.  ED&F Man would not be entitled to recover the money twice.

At a minimum, this means that ED&F Man has failed to allege plausibly that it will be entitled under any circumstances to recover attorneys' fees and costs incurred in connection with the U.K. action through its indemnity claims.  And if the Court accepted ED&F Man's argument that it would be required to apply the U.K. doctrine, the same would be true of the third-party proceedings.  But notwithstanding ED&F Man's self-defeating argument to the contrary, the Court has serious doubts that the U.K.'s fee doctrine would apply in these MDL proceedings by way of

---

[38]

ED&F Man Mem. at 18.

[39]

This argument is, of course, a double-edged sword.  If U.K. law applies to attorneys' fee issues in these third-party proceedings and ED&F Man does not prevail on its indemnification claims, its argument suggests that the third-party plaintiffs would be entitled to recover their own attorneys' fees and costs from ED&F Man.

14

the choice of law provisions. New York courts view their rule that parties pay their own attorneys' fees as a fundamental public policy, and they appear to treat foreign fee shifting rules as procedural, meaning they cannot apply by way of a choice of law provision.[40] If this is correct, any entitlement to attorneys' fees necessarily would come not from the operation of U.K. law, but from the Custody Agreements themselves, specifically the indemnity provisions.

Thus, the only circumstance in which ED&F Man plausibly would have a claim to indemnification for whatever fees and costs it already has incurred would be if it survived these proceedings without a finding that it engaged in negligent or fraudulent misconduct. For all the reasons just explained, that contingent and narrow claim is not ripe for adjudication.[41]

## III.    Abstention

The conclusions reached above dispose of ED&F Man's counterclaims in their entirety. But in addition, the Court exercises its discretion under the doctrine of prudential ripeness to abstain from asserting jurisdiction over the counterclaims. "Prudential ripeness is . . . a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in

---

[40]

See, e.g., Deutsche Bank, No. 15-cv-3869 (GHW), 2016 WL 5719783, at *14-15 ("The Court finds that a New York court would consider the issue of attorneys' fees to be procedural, rather than substantive[, and therefore decline to apply the U.K.'s 'loser pays' rule]."); see also id. at *15 ("[T]he New York Court of Appeals has stated that the New York rule on attorneys' fees 'reflects a fundamental legislative policy decision . . . .'" (quoting Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 22 (1979)). Because the parties have not adequately briefed this issue, the Court does not resolve it one way or the other.

[41]

The same is true of the indemnification claims premised on fees and costs already incurred in connection with the U.K. litigation. ED&F Man's claims to such fees are at least as contingent, and in fact are more contingent in light of the possibility that SKAT would be required to pay them if ED&F Man prevailed, than its claims to fees incurred in connection with these third-party actions.

adjudications that may later turn out to be unnecessary . . . ."[42]  A court may abstain from exercising jurisdiction by consideration of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[43]

As outlined above, the indemnification claims are unfit for adjudication at this time because they turn entirely on contingent future events.[44]  With respect to all the amounts for which ED&F Man seeks indemnity, its entitlement to recovery will turn on whether this Court or the U.K. court concludes that it engaged in negligent or fraudulent misconduct.  And with respect to the portion of its claims seeking to recover costs not yet incurred, whether ED&F Man ever will be required to satisfy a judgment or pay other future expenses, as well as the amounts of any judgment or expenses, is speculative.

Moreover, resolving the claims now would enable wasteful, piecemeal litigation. ED&F Man will continue incurring attorneys' fees on a daily basis until the conclusion of this litigation and the U.K. litigation.  And if it somehow were required to pay a judgment not involving a finding of negligence or fraud on its behalf, it may be entitled to indemnification for that liability, as well.  Treating each instance of a cost incurred as a separate lawsuit would impose unreasonable burdens on the third-party plaintiffs and the Court.

Finally, ED&F Man has not contended that it would suffer any hardship by waiting until the conclusion of its various lawsuits to pursue any claim for indemnity it may possess at that

---

[42] *Nat'l Org. for Marriage*, 714 F.3d at 687 (citation omitted).

[43] *Id.* at 691 (citation omitted).

[44] *See id.* at 691 ("The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." (citation omitted)).

16

time.[45]  It has not even quantified the amounts it claims to have paid already.[46]

While a claim to attorneys' fees that continue accruing may be appropriate in some circumstances, it would be inappropriate here.

*Conclusion*

For the reasons stated above, the motions to dismiss the counterclaims [Dkts. 339, 343, and 346] are granted.

SO ORDERED.

Dated:        July 13, 2020

_____
Lewis A. Kaplan
United States District Judge

---

[45]  *See id.* ("In assessing [the] possibility of hardship, we ask whether the challenged action creates a direct and immediate dilemma for the parties." (citation omitted)).

[46]  It bears repeating that ED&F Man's argument that it is entitled to these fees and costs consists of a single paragraph in its opposition brief without citation to authority and lacking any serious discussion of the issues considered in this opinion.