# Exhibit 6

# RE-AMENDED SCHEDULE 5T[1]

1. ED&F Man Capital Markets Limited ("**ED&F Man**") is the 69th Defendant in the First Claim. It is a company incorporated in England and Wales with registration number 1292851.

## A   UNJUST ENRICHMENT

2. As a result of the ED&F Man Applications (identified in Schedule 1B) in respect of which ED&F Man issued Tax Vouchers, ED&F Man received fees and other payments (details of which will be provided after disclosure and/or witness statements).

## B   NEGLIGENT MISREPRESENTATION

### B1.   The ED&F Man Scheme

3. In or about 2012, ED&F Man devised and structured a scheme to enable it to profit from the making of apparently eligible withholding tax applications to SKAT and SKAT's acceptance of the same ("**the ED&F Man Scheme**").

4. In broad terms, the scheme involved the recruitment by ED&F Man as clients of US and Canadian pension plans ("**the PPs**"). Furthermore, the scheme involved ED&F Man acting as custodian on behalf of the PPs. The scheme further involved ED&F Man purportedly purchasing shares in Danish listed companies and concluding or procuring a series of transactions purporting to vest beneficial ownership of the shares in the PP over the Reference Date (as defined in paragraph 10.2 of ED&F Man's Amended Defence), with the shares being sold shortly afterwards. These transactions were to be entirely financed by ED&F Man, with no funding provided by the PPs. The only purpose of the scheme was to enable ED&F Man to produce Tax Vouchers to be used to make withholding tax applications to SKAT on behalf of the PPs, and to induce SKAT to make payments in reliance on the same.

---

[1] This Re-Amended Schedule 5T replaces the entirety of Amended Schedule 5T as part of the Claimant's re-re-amendments to the Particulars of Claim. For convenience, the schedule as a whole is not shown in purple and underlined but should be so treated. Given the extent of the changes, the deletions to Amended Schedule 5T are not shown.

1

5. Pending disclosure, SKAT relies upon the following facts and matters in support of the existence of the alleged scheme.

   (a) ED&F Man was the principal beneficiary of the withholding tax refunds allegedly received on behalf of the PPs through the fees and charges levied by it.

   (b) The chain of transactions averred by ED&F Man at paragraph 10 of its Amended Defence comprises a scheme intended to enable a PP to make a withholding tax application ("**the Paragraph 10 Transactions**"). The chain of transactions had no other purpose. Save for the ED&F Man Applications identified in Annex E to ED&F Man's Amended Defence, ED&F Man alleges that the Paragraph 10 Transactions occurred in respect of each of the Tax Vouchers it issued. Those Tax Vouchers were issued in respect of many different PPs, groups of whom were each represented by at least eight different Investment Managers. It is inherently probable that the single identical scheme which applied to different PPs was devised by ED&F Man, the entity common to all of the applications.

   (c) Furthermore, the Goldstein Law Group PC 401(k) Profit Sharing Plan ("**the Goldstein PP**") was one of ED&F Man's PP clients and on whose behalf ED&F Man issued nine Tax Vouchers in support of WHT Applications aggregating DKK 9,521,280. In a filing dated 30 August 2019 with the US District Court in proceedings brought by SKAT against the Goldstein PP, the Goldstein PP alleges that, "*throughout 2014 and 2015, [ED&F Man's] Equity Finance desk solicited and sold to [the Goldstein PP] 'customized equity finance solutions' whereby [ED&F Man] structured and facilitated the [Goldstein PP's] tax-favoured acquisition of Danish dividends by finding and funding the Plan's Danish securities*".

**B2.   The Tax Vouchers**

6. From September 2012 to May 2015, ED&F Man implemented or purported to implement the ED&F Man Scheme. ED&F Man produced 420 documents, expressly entitled "Tax Voucher", on behalf of 36 PPs.

2

7. ED&F Man's financial benefit from the scheme depended on the successful making of the ED&F Man Applications to SKAT. As an experienced market participant, ED&F Man knew that a document in the form of the Tax Voucher was a necessary element of a successful application. SKAT further infers that ED&F Man produced the Tax Vouchers for the purpose of, and with the intention that, the Tax Vouchers would be presented to SKAT as part of an ED&F Man Application in accordance with the ED&F Man Scheme. The Tax Vouchers had no other purpose.

8. Each of those Tax Vouchers was presented to SKAT as part of an ED&F Man Application and in response SKAT paid out in aggregate DKK 582,830,719.91. Goal and Acupay paid sums received by each of them to ED&F Man following deduction of their fees. In its response to SKAT's request dated 1 March 2019 for further information, ED&F Man confirmed that, until June 2014, ED&F Man received all sums in response to ED&F Man Applications made by Global Equities directly from SKAT. Global Equities has confirmed in paragraph 15 of its Defence that, thereafter, a UK associate/agent of Global Equities received sums from SKAT, and then paid those sums, net of its fees, to ED&F Man. At all material times, as a consequence of these receipts, ED&F Man knew that successful ED&F Man Applications were being made to SKAT using the Tax Vouchers.

**B3. The ED&F Representations**

9. In each of the Tax Vouchers, ED&F Man expressly stated that:

> "*We [ED&F Man] …confirm [relevant PP] was holding the below security over the dividend date….*
>
> *[ED&F Man] has no beneficial interest in the holding and will not be reclaiming the tax. The dividends specified on this credit advice were paid net of withholding tax to [the relevant PP].*"

10. Each Tax Voucher contained the following express representations by ED&F Man to SKAT:

3

Case 1:18-md-02865-LAK   Document 398-6   Filed 07/03/20   Page 5 of 12
Case 1:18-md-02865-LAK   Document 340-4   Filed 05/18/20   Page 5 of 12

(a) That the specified number of shares in the named Danish company were held by the PP on the Reference Date.

(b) That a specific dividend had been received for the account of the named PP on the identified "*Pay Date*" and in the specified "*Amount Received*".

(c) That such dividend had been received on behalf of the named PP net of a specific amount of tax that had been withheld by the named Danish company and which had been "*suffered*" by the named PP.

(d) That ED&F Man did not have a beneficial interest in the relevant Danish shareholding and was not reclaiming any withholding tax.

11. The Tax Vouchers contained the following implied representations:

(a) That the relevant PP was the beneficial owner of the specified number of shares in the named Danish company and the beneficial owner of the amount received by way of a dividend net of withholding tax. That representation may be inferred from the document's title as a "*Tax Voucher*", the specification of a sum as "*WHT Suffered*", and the express disclaimer of any beneficial ownership of the relevant shares by ED&F Man and any tax reclaim on its behalf.

(b) Furthermore, the representation may be inferred from the purpose for which the Tax Voucher was produced by ED&F Man and was submitted to SKAT: namely to provide it with confirmation that the PP was the beneficial owner of a dividend paid on Danish shares for the purpose of a WHT Application seeking to reclaim withholding tax.

(c) That the Tax Voucher was an honest and accurate statement of the facts set out in it.

12. The express and implied representations made by ED&F Man are referred to below as the "**ED&F Man Representations**".

13. A reasonable person in the position of SKAT would have understood (and SKAT in fact understood) the ED&F Man Representations in the sense pleaded herein.

4

14. Furthermore, in the context of Tax Vouchers produced for the purpose of enabling US and Canadian resident PPs to make withholding tax reclaim applications to SKAT, a reasonable person would have understood (and SKAT in fact understood) the representation of beneficial ownership in its ordinary and natural sense: the beneficial owner is the entity that actually benefits from the interest economically and has the power freely to determine the use to which it is put, as opposed to an intermediary or nominee that is bound to pay the amounts it receives to another person. SKAT's understanding at all material times is evidenced by the terms of the guidelines published on its website.

**B4. Negligent misrepresentation**

15. ED&F Man is liable to SKAT for negligent misrepresentation in respect of the sum of DKK 574,607,396.43 that SKAT paid out in reliance upon the Tax Vouchers, after adjusting for compensation received in certain confidential settlements.

16. ED&F Man owed SKAT a duty to take reasonable care when producing the Tax Vouchers to avoid causing SKAT loss due to inaccuracies and false statements in the Tax Vouchers.

17. The duty of care arose from the following facts and matters:

    (a) ED&F Man produced the Tax Vouchers for the purpose of them being provided to SKAT as part of an ED&F Man Application.

    (b) ED&F Man intended and foresaw that SKAT would rely upon the information set out in the Tax Vouchers, without further inquiry, in making payments in response to the ED&F Man Applications. Alternatively, it was reasonably foreseeable by ED&F Man that SKAT would rely upon the Tax Vouchers as alleged.

    (c) The ED&F Man Applications made using the Tax Vouchers were principally for the benefit of ED&F Man.

    (d) SKAT relied upon the information set out in the Tax Vouchers in making the payments sought in the ED&F Man Applications. As set out below, SKAT did not have the information necessary to enable it to verify the information confirmed by ED&F Man in the Tax Vouchers. ED&F Man produced the Tax Vouchers without

5

any irregularities on the face of the documents: in the absence of any such irregularity it was SKAT's practice not to subject the application to any detailed due diligence.

(e) Furthermore, ED&F Man knew that SKAT's practice was not to subject a withholding tax application to detailed due diligence in the absence of irregularities on the face of the applications. This is to be inferred from the fact that, as ED&F Man knew, SKAT paid out under the ED&F Man Applications within a short time of receiving the request without raising any queries.

(f) SKAT's reliance was reasonable because the Tax Voucher was a formal confirmation by a then FSA registered custodian of certain facts exclusively within its knowledge. Any purchase of shares by the PPs was settled internally to ED&F Man in its books and records. Accordingly, the only source of information concerning the purchase of shares and receipt of dividends by an individual PP was ED&F Man.

(g) Furthermore, SKAT was not able to verify the information set out in each Tax Voucher because the Tax Voucher purported to summarise the cash and securities account held by ED&F Man on behalf of the relevant PP. SKAT was reasonably entitled to believe, and did believe, that the Tax Vouchers were a true and accurate summary of the accounts purportedly maintained by ED&F Man on behalf of each relevant PP.

(h) In contrast, ED&F Man failed to verify the correctness of the information set out in the Tax Vouchers, and until September 2019 failed to disclose the falsity of that information. ED&F Man's failure to verify its own Tax Vouchers can be seen from the admissions in Annex E to its Amended Defence that the relevant Tax Vouchers misstated the receipt of dividends by 22 of the relevant 36 PPs. At no material time was SKAT able to verify the information set out in the Tax Vouchers, other than by relying on the confirmation of ED&F Man, as the purported custodian of the shares.

6

    (i)    In the premises, ED&F Man assumed responsibility to SKAT for the representations made in the Tax Vouchers.

18.    The ED&F Man Representations were false in the following respects:

    (a)    In respect of the ED&F Man Applications identified in Annex E to ED&F Man's Amended Defence, served on 6 September 2019, ("**Annex E**") ED&F Man admits that the information contained in the relevant Tax Vouchers was false. ED&F Man admits that the relevant PP had not received the amount set out in the Tax Voucher by way of dividend and had not suffered withholding of the amount of tax set out in the Tax Voucher.

    (b)    Annex E provides that 80 out of the 420 Tax Vouchers produced by ED&F Man (i.e. some 19%) were false. Further, by ED&F Man's own calculation in Annex E, it misstated the aggregate sum of withholding tax purportedly due to the relevant PPs by DKK 183,902,400. That misstatement represents some 31% by value of the sums paid out by SKAT in reliance upon the Tax Vouchers.

    (c)    In the case of 64 Tax Vouchers, with an aggregate value of DKK 161,586,900, ED&F Man admits in Annex E that no withholding tax refund was due at all. By way of example, ED&F Man admits in Annex E that all or a substantial majority of the Tax Vouchers issued to the following PPs were incorrect and no dividend had been received:

        (i)    Newsong Fellowship Church 401(K) Plan ("**Newsong**"): all 4 Tax Vouchers issued;

        (ii)    Tveter LLC Pension Plan ("**Tveter**"): 7 out of 8 Tax Vouchers issued;

        (iii)    Federated Logistics LLC 401(K) Plan: 5 out of 6 Tax Vouchers issued;

        (iv)    DW Construction Inc Retirement Plan ("**DW**"): 5 out of 7 Tax Vouchers issued; and

7

  (v) Del Mar Asset Management Saving & Retirement Plan: 7 out of 10 Tax Vouchers issued.

(d) Further or in the alternative, ED&F Man falsely stated that the relevant PP was the beneficial owner of the specified shares in a Danish company and had received as beneficial owner a dividend net of withholding tax. By ED&F Man's admission in Annex E, the identified Tax Vouchers falsely stated that the relevant PP had received a net dividend in the sum specified.

(e) In any event, and with respect to the ED&F Man Applications not contained in Annex E, the relevant PP did not hold and was not the beneficial owner of the specified shares and had not received any dividend as beneficial owner net of WHT:

  (i) To the extent that the specified shares were purchased and the relevant PP held any interest in the specified shares or received any payment by way of dividend, it did so for the benefit of ED&F Man. In practical and commercial terms, ED&F Man benefitted from the receipt of any dividend if (which is not admitted) ED&F Man received any dividends.

  (ii) ED&F Man, rather than the PP, was the beneficial owner of any specified shares or any dividend received by it:

    (A) The PP was a mere nominee recipient of the dividend and received it for the benefit of ED&F Man.

    (B) The PP provided no funding for the purchase of any shares and the funding for the acquisition of shares was provided by ED&F Man.

    (C) The PP did not bear any economic risk in respect of the acquisition of any shares purchased.

    (D) The PPs had no control over the disposition of any shares purchased.

  (iii) ED&F Man was the true principal of the ED&F Man Applications. Its representation that it "*will not be reclaiming the tax*" was false.

8

19. ED&F Man breached the said duty of care by failing to exercise due care and skill in making the ED&F Man Representations.

    (a) As regards the representations in the Tax Vouchers identified in Annex E, ED&F Man failed to exercise any care and skill. The scale of ED&F Man's admitted misstatements is such that it is a case of *res ipsa loquitur*. If ED&F Man had maintained the basic systems and control that are the standard practice of a securities custodian, it would not have made the misstatements set out in Annex E.

    (b) Further or in the alternative, as an experienced and sophisticated market participant, ED&F Man ought to have known that the chain of transactions comprised in the ED&F Man Scheme did not vest beneficial ownership in the PPs. If ED&F Man had given full and proper instructions to competent legal counsel, such counsel would have advised ED&F Man that the ED&F Man Scheme did not vest beneficial ownership in the PPs. Even the most cursory examination of the commentary on the OECD Model Convention would have led ED&F Man to the conclusion that the true beneficial owner in the ED&F Man Scheme was ED&F Man.

    (c) Furthermore, SKAT infers from the admitted misstatements set out in Annex E that the ED&F Man Scheme was implemented with a careless disregard for basic systems and controls, proper accounting and/or proper record keeping. Such carelessness was systemic within ED&F Man. Pending disclosure SKAT avers that such systemic carelessness can be inferred from the following:

        (i) As set out in paragraph 18(c) above, ED&F Man admits in Annex E that all or a substantial majority of the Tax Vouchers that it issued for Newsong, DW and Tveter falsely stated that ED&F Man had received net dividends on behalf of the said PPs. That false position was also represented in the general ledgers that ED&F Man maintained on behalf of those PPs, which were disclosed to SKAT under Norwich Pharmacal Orders. The said ledgers purported to record credits to the PPs' accounts for "Cash Div" (i.e. dividends) for the particular shares said to have been purchased. In fact, no such net dividends had been received

9

       for the credit of those PPs in respect of those Tax Vouchers identified in Annex E.

  (ii)  On 12 September 2019, SKAT asked ED&F Man by way of Part 18 Request to identify, in respect of the Tax Vouchers referred to in Annex E, to whom ED&F Man paid the WHT refunds received. On 26 September 2019, ED&F Man responded stating that it remained in the course of conducting a review and did not anticipate being able to provide a response until the end of November 2019.

  (iii)  By a letter dated 10 October 2019, ED&F Man said that in May 2019 it had retained the services of FTI Consulting to conduct a review of the Tax Vouchers referred to in Annex E. ED&F Man's apparent inability to explain the causes of the admitted errors in Annex E without some six months' work by external consultants implies a systemic failure of basic systems and controls. It implies a failure by ED&F Man to perform its most basic duties as a custodian.

  (iv)  ED&F Man has refused to provide an explanation as to why the Annex E Tax Vouchers were false to its PP clients to whom those Tax Vouchers related. On 12 November 2019, seven of ED&F Man's PP clients filed an Amended Third-Party Complaint and Jury Demand against ED&F Man in the United States District Court, Southern District of New York. In paragraph 72, those PPs alleged that "*[d]espite multiple inquiries from Third-Party Plaintiffs, ED&F Man has refused to explain why the Disavowed Tax Vouchers are false or how ED&F reached that determination*". An equivalent allegation was also made in a materially identical document filed on the same date in the same court by the Newsong Fellowship Church 401(K) Plan (in paragraph 71).

(d)  In or about April 2019, ED&F Man closed the business division responsible for the ED&F Man Scheme. In or about August 2019, ED&F Man ended the employment of Mr Hawksworth, its then CEO. (He had signed the statement of truth to ED&F Man's Defence of December 2018 that had wrongly asserted that the Annex E Tax Vouchers contained true representations of fact.) SKAT infers that ED&F Man took

        these steps in an attempt to rectify the negligent business practices exposed by SKAT's claim.

20. SKAT has suffered loss and damage as a result of ED&F Man's negligence.

21. In reliance upon the ED&F Man Representations, SKAT paid out sums aggregating DKK 582,830,719.91. But for the ED&F Man Representations, SKAT would not have paid out that sum or any sum. SKAT took at face value the ED&F Man Representations. SKAT was unable to determine by itself that the ED&F Man Representations were false. The falsity inherent in each of the Annex E Tax Vouchers was information that ED&F Man presumably claims it failed to uncover in preparing its Defence filed in December 2018, where it pleaded incorrectly that the statements contained in those Tax Vouchers were true. Similarly, ED&F Man did not disclose to SKAT the detail of the ED&F Man Scheme until ED&F Man's Defence of December 2018.

22. In October 2018, SKAT entered into confidential settlements by which it received compensation in respect of WHT Applications submitted by certain PPs, including WHT Applications supported by ED&F Man's Tax Vouchers. SKAT's loss after the said compensation is DKK 574,607,396.43, in respect of which it makes claim.

**B5. Danish law claims**

23. The conduct of ED&F Man in producing the Tax Vouchers in respect of the ED&F Man Applications was grossly negligent or at least negligent. The Tax Vouchers contained false statements of fact as set out above.

24. In producing the false and misleading Tax Vouchers, ED&F Man failed to exercise the standard of care required of a professional financial service provider under the circumstances in this case.

25. SKAT relies upon the fees and payments received by ED&F Man as a consequence of issuing the tax Vouchers in support of its claim under Danish law for negligence and unjust enrichment/restitution.

11